PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
EMMA Z. BURGOON (CA SBN 348097)
EBurgoon@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

Attorneys for Defendant
ADIDAS AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MAEVE CAMPLISSON, DAVID SANCHEZ, and S.D., A MINOR, BY AND THROUGH THEIR LEGAL GUARDIAN ELVIS DICIERO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ADIDAS AMERICA, INC.,

Defendant.

Case No. 25-cv-00603-GPC-KSC

**DEFENDANT ADIDAS AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Hon. Gonzalo P. Curiel

Date: October 10, 2025
Time: 1:30 PM
Ctrm: 12A

Complaint Filed: March 19, 2025

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 2

II. RELEVANT BACKGROUND .......... 4

A. adidas's Services and Cookie Practices .......... 4

B. Plaintiffs' Allegations Regarding adidas's Website .......... 5

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 7

A. Plaintiffs Do Not Plead an Injury and Therefore Lack Article III and Statutory Standing .......... 7

1. A bare alleged procedural violation does not establish Article III or statutory standing .......... 7

2. Plaintiffs' alleged injury is at odds with traditional privacy harms and CIPA's legislative intent .......... 10

a. Plaintiffs do not allege that their data is sensitive or was misused .......... 10

b. Plaintiffs' interpretation of § 638.51(a) is contrary to the statute's original intent .......... 13

3. Plaintiffs must allege more detailed facts to establish concrete harm under CIPA § 638.51(a) .......... 14

B. Plaintiffs' CIPA § 638.51(a) Claim Fails Under the Statute's Plain Text .......... 16

1. The Cookies are not "pen registers" .......... 16

2. adidas may lawfully use a pen register because it is the "user" of the technology .......... 20

3. Plaintiffs consented to adidas's use of the Cookies .......... 20

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 6, 7

*Aviles v. LiveRamp, Inc.*,
No. 24STCV19869,
2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) ........................................ 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 7

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
No. 3:14-cv-00751-GPC-DHB,
2016 WL 3543699 (S.D. Cal. June 29, 2016) ........................................ 9

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........................................ 8

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011). ........................................ 19

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................ 6

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ........................................ 20

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122,
2024 WL 5134350 (9th Cir. Dec. 17, 2024) ........................................ 9

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................................ 6

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................ 20

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) .......... 14

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 6, 7

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 11

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 9

*Greenley v. Avis Budget Group Inc.*,
No. 19-cv-00421-GPC-AHG,
2020 WL 5230471 (S.D. Cal. Sept. 2, 2020) .......... 8

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 19

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 11

*Heiting v. FKA Distrib. Co.*,
No. 2:24-cv-07314-HDV-AGR,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 12, 14, 15

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSX,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 11, 14, 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 11

*Jewel v. NSA*,
673 F.3d 902 (9th Cir. 2011) .......... 9

*Ji v. Naver Corp.*,
No. 21-cv-05143-HSG,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .......... 11

*Khamooshi v. Politico LLC*,
No. 24-cv-07836-SK,
2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 11, 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ..................................... 12, 14, 18

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ..................................................................... 7

*Licea v. Hickory Farms LLC*,
No. 23STCV26148,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024)......................................... 14

*United States ex rel. Lim v. Salient Fed. Sols. Inc.*,
No. 16-cv-740-GPC-AGS,
2018 WL 2128666 (S.D. Cal. May 9, 2018) (Curiel, J.)..................................... 6

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)........................................................................ 6

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988).......................................................................... 7

*Moody v. C2 Educational Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024)........................................................... 19

*Moretti v. Hertz Corp.*,
No. C 13-02972 JSW,
2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) .................................................. 21

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014)....................................................................... 21

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ............................................................ 7

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504,
2024 WL 3886811 (Cal. Super. Ct. July 9, 2024)............................................... 9

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)............................................. 13

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)............................................................. 10

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 22

*Smith v. Maryland*,
442 U.S. 735 (1979) .......... 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6, 8, 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 10

*United States v. Christie*,
624 F. 3d 558 (3d Cir. 2010) .......... 13

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 17, 18

*United States v. Giordano*,
416 U.S. 505 (1974) .......... 17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 10

*Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565-BAS-DEB,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 19

**Statutes**

18 U.S.C. § 2510 *et seq*. .......... 20

18 U.S.C. § 2701(c) .......... 20

California Invasion of Privacy Act,
Cal. Pen. Code § 630 *et seq*. .......... *passim*

Cal. Pen. Code § 638.50(b) .......... 3, 17, 18, 20

Cal. Pen. Code § 638.51(a) .......... *passim*

Cal. Pen. Code § 638.51(b)(5) .......... 20

California Online Privacy Protection Act,
Cal. Bus. & Prof. Code § 22575 *et seq.* ........................................................ 5, 22

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2), (d)(1)........................................................ 18

Federal Rule of Civil Procedure 12(b)(1)........................................................ 6

Federal Rule of Civil Procedure 12(b)(6)........................................................ 6

Hearing on S.B. 690 Before the S. Standing Comm. on Pub. Safety,
2025-2026 Reg. Sess. (Cal. Apr. 29, 2025),
https://calmatters.digitaldemocracy.org/hearings/258956?t=238&f=
a705613762a9470e2b716124efd7f48a ........................................................ 2

California Bill Analysis, A.B. 929 Assem., Apr. 29, 2015 ........................................ 13

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 10, 2025 at 1:30PM, or as soon thereafter as the matter may be heard, in the United States District Court for the Southern District of California, Courtroom 12A, located at 333 West Broadway, San Diego, California 92101, Defendant adidas America, Inc., through its undersigned counsel will, and hereby does, move to dismiss Plaintiffs' Corrected Class Action Complaint (ECF No. 3) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in its entirety.

adidas's Motion to Dismiss is based on this Notice, the supporting Memorandum of Points and Authorities, the Declaration of Purvi G. Patel, the Request to Consider Documents Incorporated by Reference and for Judicial Notice, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

Dated: July 16, 2025

MORRISON & FOERSTER LLP

By: */s/ Purvi G. Patel*
Purvi G. Patel

***Attorneys for Defendant adidas America, Inc.***

# I. INTRODUCTION

Litigation involving California's mid-century wiretapping statute, the California Invasion of Privacy Act ("CIPA"),[1] has been trending for the past several years. Across state and federal courts in California, plaintiffs have filed a host of lawsuits stretching various provisions of the statute to apply to the modern internet age. In doing so, they seek to proscribe ubiquitous internet technologies like cookies used for targeted advertising. These cookies allow businesses like adidas to show advertisements to those individuals most likely to be interested in them—as retailers have done for decades in the "offline" world.

Plaintiffs contend that CIPA applies to the use of these technologies for advertising purposes. But the statute, enacted in 1967, sought to curtail law enforcement's use of phone tapping devices without a court order. It aimed to enshrine citizens' privacy rights in the face of a potential threat by government agents, not limit the ability of businesses to effectively advertise their products to consumers. Many courts have recognized the problems with interpreting CIPA as expansively as Plaintiffs urge. Now, the California Legislature has taken up the issue. A new Senate bill seeks to clarify that CIPA was not meant to apply to businesses like adidas who fully comply with other applicable privacy laws.[2] But that has not prevented plaintiffs from continuing to test new CIPA theories.

This case is one of nearly a hundred actions pursuing a trendy new CIPA claim[3]—that website cookies are akin to the "pen registers" law enforcement uses

---

[1] Cal. Pen. Code § 630 *et seq*. Unless otherwise specified, all further statutory section references are to the California Penal Code.

[2] S.B. 690 seeks to clarify that CIPA was not meant to regulate business activities that fall under the mandates of the California Consumer Privacy Act ("CCPA"), as adidas's alleged conduct does. *See* Crimes: Invasion of Privacy, S.B. 690, Hearing on S.B. 690 Before the S. Standing Comm. on Pub. Safety, 2025-2026 Reg. Sess. (Cal. Apr. 29, 2025) (statement of Sen. Anna Caballero) ("[B]usiness activities already regulated by the CCPA are not within the scope of CIPA."), https://calmatters.digitaldemocracy.org/hearings/258956?t=238&f=a705613762a9470e2b716124efd7f48a.

[3] adidas is aware of at least 78 similar lawsuits brought under CIPA § 638.51(a) over the past year and a half, with the vast majority of these lawsuits filed in 2025.

to tap suspected criminals' phones.[4] Here, Plaintiffs contend that two cookies—the TikTok Pixel and Microsoft Bat Bing Tracker (together, the "Cookies")—collect data like IP addresses from website visitors' computers and smartphones in violation of CIPA § 638.51(a). But conspicuously absent from the Complaint are any specific allegations about ***their*** visits to adidas's website, any information adidas collected about ***them***, or any harm ***they*** suffered as a result**.** Instead, Plaintiffs fill the Complaint with allegations about data the Cookies ***may*** collect on ***users generally.*** That is insufficient to establish that Plaintiffs have suffered any injury, and, as uninjured parties, Plaintiffs lack Article III and statutory standing.

Separately, Plaintiffs' legal conclusion that the Cookies constitute a "pen register" under § 638.51(a) does not adequately plead a CIPA violation. As an initial matter, the Cookies do not constitute "pen registers" under the plain text of the statute because they do not capture all outgoing "routing, addressing, or signaling" information from Plaintiffs' computers and smartphones. § 638.50(b). Even if the Cookies were found to be "pen registers" (and they are not), adidas has expressly consented to their use on its website, precluding liability under CIPA's exemption for users of "electronic communication service[s]" like internet cookies. *Id*. Plaintiffs also consented to any purported collection of data under the same CIPA provision as users of adidas's website (another "electronic communication service"). Under adidas's Terms and Conditions (which bind all website visitors) use of the website is subject to the Privacy Policy. That policy discloses that the Cookies may collect and share certain categories of information from visitors—a

[4] Under Count I, Plaintiffs clearly limit their §638.51(a) claim to "pen registers," but elsewhere make vague reference to "trap and trace processes." (*Compare* Corrected Class Action Complaint, ECF No. 3 ("Compl.") ¶ 70) *with id.* ¶ 61(d).) The two technologies are distinct under the statute and the basis for liability differs for each. Because Plaintiffs do not assert under Count I that the Cookies are trap and trace devices, adidas focuses on their claim that the Cookies constitute pen registers. Plaintiffs' stray references to trap and trace devices violate the requirements of Federal Rule of Civil Procedure 8, as discussed further in footnote 9.

fact Plaintiffs acknowledge. Plaintiffs consented to the Terms and Conditions, and, by extension, to the actions disclosed in the Privacy Policy. Their CIPA claim is foreclosed for this independent reason.

The Court should resist Plaintiffs' invitation to expand CIPA to apply to the Cookies, which would contravene the statute's intended purpose and improperly punish lawful businesses like adidas.

## II. RELEVANT BACKGROUND

### A. adidas's Services and Cookie Practices

Through its website www.adidas.com/us, adidas makes it easy for consumers to purchase and access information about its popular sportswear brand. (Compl. ¶¶ 2-3.) Visitors to the webpage, including Plaintiffs, are bound by adidas's Terms and Conditions, which dictate that a consumer's "use of our [website] is subject to [adidas's] Privacy Policy." (*See* Request to Consider Documents Incorporated by Reference and for Judicial Notice ("RJN") Exhibit 1 at 7.) That policy is transparent about adidas's use of tracking technologies, including the use of third-party trackers like the Cookies to deliver targeted advertising. The relevant provisions state that:

- adidas, "[l]ike many websites, [] use[s] cookies, tags, pixels, beacons and other tracking technologies (collectively referred to as 'Cookies')" in order to "optimize the shopping experience."
- Cookies allow adidas "to select which of [its] advertisements or offers are most likely to appeal to [the consumer] and display them while [the consumers] are on the [w]ebsite."
- adidas uses "third-party companies to measure and target ads on [its] behalf about products and services tailored to [the consumer's] interests.

(RJN, Exhibit 2 at 6.) Moreover, the policy explicitly directs consumers on how to opt out of the collection of their data:

> Consumers can disable Cookies through their browser or by visiting www.aboutads.info/choices/ and http://optout.networkadvertising.org/#/. Consumers can also "opt out of having [their] information used for cookie-based ad targeting activities" by visiting the "Your Privacy Choices" link in the

footer of each page on the website.

(*Id.*) Pursuant to the California Online Privacy Protection Act ("CalOPPA"), Cal. Bus. & Prof. Code § 22575 *et seq.*, adidas maintains a link to the Privacy Policy in the footer available on each page of its website.

Plaintiffs admit that the Privacy Policy "describe[s] that cookies and other tracking technologies are implemented on the browser in order to collect and store data, including . . . to deliver relevant advertisements[.]" (Compl. ¶ 50.) They also confirm that adidas complies with the mandates of CalOPPA by making the Privacy Policy (and Terms and Conditions) accessible by "clicking a hyperlink […] at the bottom of the [a]didas [w]ebsite."[5] (*Id.* ¶ 51.) While they posit that the relevant links to the terms are not "readily visible or highlighted" to ***users generally***, they make no claim about whether ***they*** saw the links themselves. (*Id.* ¶¶ 50-51.)

### B. Plaintiffs' Allegations Regarding adidas's Website

Plaintiffs make numerous allegations about the purported data collection capabilities of the TikTok Pixel and Microsoft Bat Bing Tracker. They generally allege that when any user visits adidas's website, "the [a]didas [w]ebsite's code, at [a]didas's direction, installed the [TikTok Pixel and Microsoft Bat Bing Tracker] onto the users' browser . . . . without notice to the users." (*Id.* ¶ 26.) They devote over 6 pages of their Complaint to further describing the information the Cookies collect, how they collect it, and how it is used. But nowhere in their expansive description do Plaintiffs allege that ***their own*** data was collected with any specificity, or that they suffered any harm from the collection. Their narrative simply provides a speculative overview of data ***potentially*** collected by the Cookies for unspecified users, untethered to Plaintiffs themselves. The ***only*** specific information that Plaintiffs allege adidas purportedly collected from ***them*** is the IP

---

[5] Plaintiffs' reference to adidas's "Terms of Use" throughout the Complaint appears intended to refer to both the Privacy Policy and Terms and Conditions. (*See* Compl. ¶ 51 (screenshot highlighting hyperlinks to Privacy Policy and Terms and Conditions).)

addresses associated with their computers and smartphones. (*Id.* ¶¶ 55, 57, 62, 69, 70.) They make no further attempt to detail their interactions with adidas's website—at no point do they specify when they visited, how many times they visited, whether they purchased any items, or whether and what personal information they input into the website interface.

## III. LEGAL STANDARD

To allege Article III standing, Plaintiffs must plausibly plead that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Failure to do so requires dismissal under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Each Plaintiff must have standing before they can represent a class and "must allege and show that they personally have been injured," not that the injury has been suffered by other, unidentified class members. *Spokeo*, 578 U.S. at 338 n.6 (citation omitted); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1069 (N.D. Cal. 2015); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007). Plaintiffs cannot meet this standard.

Separately, a complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff either fails to state a cognizable legal theory or has not alleged sufficient facts establishing a claim to relief that is "plausible on its face." *United States ex rel. Lim v. Salient Fed. Sols. Inc.*, No. 16-cv-740-GPC-AGS, 2018 WL 2128666, at *1 (S.D. Cal. May 9, 2018) (Curiel, J.) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *see also Pena v. GameStop, Inc.*, 670 F. Supp.

3d 1112, 1116 (S.D. Cal. 2023) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted)). Thus, the Court must not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations, nor should it accept as true allegations contradicted by judicially noticeable facts. *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine "permits [the Court] to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading'" (citation omitted)).

## IV. ARGUMENT

Plaintiffs assert a single unsubstantiated and conclusory claim that adidas violates CIPA § 638.51(a) through its use of a "pen register" (i.e., the Cookies) to collect information from website visitors. But Plaintiffs fail to allege that the Cookies collect information sufficient to establish a concrete privacy harm. Their lack of standing independently forecloses their ability to bring this claim.

Moreover, Plaintiffs fail to state a claim under Rule 12(b)(6) because (1) the Cookies are not "pen registers" when considering either the plain text of CIPA § 638.51(a) or the legislative intent of the statute; (2) even if they were, adidas consented to installing "pen registers" on its site as the "user" of the Cookies (negating the need for Plaintiffs to consent); and (3) regardless, Plaintiffs consented to the use of the Cookies in agreeing to the Privacy Policy.

### A. Plaintiffs Do Not Plead an Injury and Therefore Lack Article III and Statutory Standing

#### 1. A bare alleged procedural violation does not establish Article III or statutory standing

To state an injury-in-fact sufficient to confer Article III standing, Plaintiffs must allege an injury that is both "concrete and particularized" and "actual or

imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). It is insufficient for Plaintiffs to "take the position that any violation of CIPA necessarily constitutes an injury in fact without the need for an additional showing of harm." *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023). That is exactly what Plaintiffs have done here.

Plaintiffs allege that their "private information was acquired by [a]didas through the use of third-party trackers embedded into [a]didas's website" (Compl. ¶ 56) and that adidas was "secretly sharing [personally identifying and addressing] information with undisclosed third parties" (*id.* ¶ 55). Nowhere do Plaintiffs plead ***any*** injury—physical, economic, or otherwise—they suffered. Their failure to do so requires dismissal for lack of standing. *See Greenley v. Avis Budget Group Inc.*, No. 19-cv-00421-GPC-AHG, 2020 WL 5230471, at *5 (S.D. Cal. Sept. 2, 2020) (Curiel, J.) ("[T]he fact that a legislature has 'granted a person a statutory right and purported to authorize that person to sue to vindicate that right' is not by itself sufficient for standing." (quoting *Spokeo*, 578 U.S. at 341)).

Further, because Plaintiffs plead no injury-in-fact, there is no injury or harm that is "'fairly traceable' to [a]didas's challenged conduct" or that can be "redressed by an award of damages or injunctive relief." (Compl. ¶ 56.) Plaintiffs attempt to circumvent this fact by citing two cases purportedly finding standing for similar alleged statutory "violation[s] of privacy rights." (*Id.*) The cases run directly counter to a more recent Ninth Circuit case finding that allegations that a website collects and shares information regarding an individual's visit fails to establish any "injury in fact that is concrete, particularized, and actual or imminent." *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *2 (9th Cir. Dec. 17, 2024) (citation omitted). They are also independently distinguishable.

*In re Facebook, Inc.*, found that the plaintiffs sufficiently alleged a concrete privacy injury where they alleged Facebook made sensitive communications

revealing plaintiffs' "locations, their religious and political preferences, [and] their video-watching habits" widely available to third parties. 402 F. Supp. 3d 767, 786-87 (N.D. Cal. 2019). Here, Plaintiffs only specifically allege collection of the IP addresses associated with their computers and smartphones, which are not similarly sensitive. (Compl. ¶¶ 55, 57, 69, 70.)

The allegations here also distinct from those in *Jewel v. NSA,* 673 F.3d 902 (9th Cir. 2011). In that case, the court found standing for a Federal Wiretap Act claim where the plaintiff "alleged with particularity that her communications were part of the dragnet [of warrantless eavesdropping by the government]" and claims were not "a blanket policy challenge." *Id.* at 910. In contrast, Plaintiffs' allegations amount to a criticism of the use of cookies generally—akin to a "blanket policy challenge" that does not plead that adidas violated their rights specifically.

Plaintiffs' failure to plead any injury also equates to a failure to establish statutory standing under CIPA. CIPA allows for a private right of action only where a person is "***injured*** by a violation." § 637.2(a) (emphasis added). Statutory standing can be established only where "plaintiff alleges 'a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.'" *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-cv-00751-GPC-DHB, 2016 WL 3543699, at *5 (S.D. Cal. June 29, 2016) (Curiel, J.) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *see also Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. Ct. July 9, 2024) (holding that a plaintiff must "allege a concrete injury-in-fact" to establish statutory standing under CIPA). Plaintiffs' failure to plead ***any*** injury—much less the particularized injury required — precludes any finding that they have statutory standing to bring their claim.[6]

[6] Plaintiffs' cite to *Shah v. Fandom*, *Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) does not help them. They claim that the case supports a finding that their conclusory allegations regarding adidas's use of the Cookies to collect IP addresses (Compl. ¶ 57) are sufficient to confer statutory standing. But there, the court found

### 2. Plaintiffs' alleged injury is at odds with traditional privacy harms and CIPA's legislative intent

Plaintiffs also lack standing because (i) the "injury" they allege—violation of CIPA through collection of IP addresses—does not bear a "close relationship" to traditional privacy harms at common law; and (ii) their interpretation of § 638.51(a) does not comport with the historical intent of the statute.

#### a. Plaintiffs do not allege that their data is sensitive or was misused

Traditionally, privacy injuries can only confer standing where a party alleges collected information was (1) sensitive ***and*** (2) disseminated or misused. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (standing "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury"); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (explaining that, in the context of informational privacy, only the "dissemination or misuse of *sensitive* and *confidential* information" is protected (emphasis in original) (citation omitted)). Neither the information Plaintiffs allege adidas collects from them personally or users generally is considered sensitive, nor have Plaintiffs adequately alleged that their information was shared with third parties or misused.

***No sensitive information involved.*** The only data Plaintiffs specifically allege adidas collects from ***them*** (as opposed to users generally) are the IP addresses associated with their computers and smartphones. (Compl. ¶¶ 55, 57, 62, 69, 70.) Courts have consistently held that there is no reasonable expectation of privacy in this type of information—both in the context of § 638.51(a) claims and common law invasion of privacy claims. *See, e.g.*, *Khamooshi v. Politico LLC*, No.

---

that plaintiff had statutory standing largely because defendant had waived the argument, not only because plaintiff alleged collection of IP addresses. *Shah*, 754 F. Supp. at 932.

24-cv-07836-SK, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) (disclosing IP addresses does not give rise to a privacy injury sufficient to confer standing for § 638.51 claim); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (collecting IP addresses does not "constitute[] a serious invasion of a protected privacy interest"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("[N]o legally protected privacy interest in IP addresses.").

There is also no reasonable expectation of privacy in the "unique identifiers," "browsing information," "fingerprinting" information,[7] and information allegedly captured through TikTok's "AutoAdvanced Matching" technology. (Compl. ¶¶ 3, 24, 31, 34.) At the outset, Plaintiffs fail to allege that adidas collects any of this information from ***them.*** Even if they had, caselaw dictates that they have no right to privacy in connection with any of this non-sensitive information:

| | |
|---|---|
| **Device and Browser Information** | Near-identical allegations regarding the collection of "device and browser information" were found insufficient to confer standing for a § 638.51(a) claim. *See, e.g.*, *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (citation omitted), *adopted*, No. CV 24-3081-GW-KSX, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024).<br><br>No right to privacy in the same information for a common law invasion of privacy claim. *Ji v. Naver Corp.*, No. 21-cv-05143-HSG, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collecting cases where "user and device identifiers" were insufficient to "give rise to a privacy injury"); *see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (no constitutional right to privacy in unique device identifier number). |
| **"Fingerprinting" Information** | Indistinguishable allegation that "fingerprinting" "collects as much information as possible about the [a]didas [w]ebsite user" (Compl. ¶ 31) in § 638.51(a) case found to amount to a "conclusory statement[]" that "failed to allege the invasion of a legally protected right." *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *3-4 (N.D. Cal. June 24, 2025) (citation omitted). |

[7] Plaintiffs use "fingerprinting" to refer to the process through which the TikTok Pixel collects information. (Compl. ¶ 31.) They generally allege that it collects information from a visitor to adidas's website and matches it with information it has collected from other websites. (*Id.*) That describes how any standard cookie works.

| | |
|---|---|
| **"AutoAdvanced Matching" Information** | General reference to the "information" collected through "AutoAdvanced Matching" (Compl. ¶ 34) cannot confer standing because it does not "clearly allege what personalized information of [theirs] was actually collected." *Heiting v. FKA Distrib. Co.*, No. 2:24-cv-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (quoting *Hughes*, 2024 WL 5179916, at *4-5). |

***No alleged sharing or misuse.*** Because Plaintiffs do not allege adidas collected sensitive information, they cannot plead a privacy injury—even if they adequately alleged that their information was shared with third parties (and they do not). Plaintiffs never allege that adidas shared ***their*** data; the closest they come is alleging that adidas shared data from "users" with TikTok and Microsoft. (Compl. ¶ 3.) Additionally, while Plaintiffs allege that data was shared with "third parties to conduct targeted advertising" (*id.* ¶ 57), nowhere do they claim that ***they*** were served ***any*** ads targeted to their interests (or that those ads were unwanted or unhelpful). They therefore have no plausible basis to allege that their data was shared with third parties. Nor do they have a plausible basis for misuse. Nowhere do they allege that their identities were stolen or that they suffered any other harm traditionally associated with misuse of personal information.

In an attempt to transform the act of collecting innocuous information into something sinister, Plaintiffs claim that use of the TikTok Pixel "poses particular privacy concerns given TikTok's China-based ownership." (Compl. ¶ 38.) Yet Plaintiffs do not allege that their data was misused by the Chinese government, or that there is any way that IP addresses, which are numerical labels assigned to devices connected to the internet, could be used to identify them or otherwise misused by anyone, much less the Chinese government. *See United States v. Christie*, 624 F. 3d 558, 563 (3d Cir. 2010) ("[S]ite administrators do not possess information linking a given IP address to a particular person."). They can point only to reporting on two incidents: (1) a 2022 article claiming that TikTok's parent company "planned to use location data […] to surveil […] two American citizens"

(Compl. ¶ 41) and (2) a CNN article reporting that rogue employees of the same company accessed the data of two journalists (*id.* ¶ 42). These cherry-picked examples do not substantiate any risk of misuse given the small subset (4 people) of individuals reportedly targeted. Nor do they provide anything other than conjecture about the far-fetched possibility of potential future misuse, which does not satisfy *Spokeo*'s requirements for "concrete and particularized" harm that is "not conjectural or hypothetical." 578 U.S. at 339. Plaintiffs' position, taken to the logical extreme, implies that any Chinese company might use data for nefarious means.

**b. Plaintiffs' interpretation of § 638.51(a) is contrary to the statute's original intent**

Plaintiffs claim that CIPA should apply to the Cookies because the statute was passed to address "the development of new devices and techniques for the purpose of eavesdropping upon private communications." (Compl. ¶ 14 (quoting § 630).) But when the statute was enacted in 1967, the "new devices and techniques" referenced pen registers installed on landline telephones to track the calls of suspected criminals. *See* California Bill Analysis, A.B. 929 Assem., Apr. 29, 2015 ("This bill authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance."); *see also Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) ("[T]he legislative history of [] CIPA suggests that 'pen register' and 'track [*sic*] and trace devices' refers to devices or processes that are used to record or decode […] information from telephone numbers, not internet communications such as websites."). It was not meant to apply to internet technologies decades away from being invented that have nothing to do with surveillance by law enforcement.

Plaintiffs argue that the statute can be read "to apply to new technologies where such a reading would not conflict with the statutory scheme." (Compl. ¶ 17

(citation omitted).) But a court should not construe a statute to create absurd results. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 670 (9th Cir. 2021) (courts "avoid absurd results when interpreting statutes"). If a website's collection of a user's IP address violated CIPA, the internet would cease to function. Recent California state court decisions recognize the disastrous practical effects of mandating liability for purported collection of IP addresses, which would "potentially disrupt a large swath of internet commerce." *See, e.g.*, *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024) (finding plaintiff's theory contrary to public policy in similar § 638.51(a) case because of the ubiquitous role of IP addresses). The Legislature could not have intended to proscribe basic technologies necessary for a business to lawfully operate online.

### 3. Plaintiffs must allege more detailed facts to establish concrete harm under CIPA § 638.51(a)

Courts have repeatedly found that plaintiffs lack standing to bring § 638.51 claims where they merely allege that they visited a defendant's website, and otherwise "fail[] to allege any basic facts from which the Court could infer a concrete injury." *E.g.*, *Heiting*, 2025 WL 736594, at *3; *Kishnani*, 2025 WL 1745726 at *3 (no standing where plaintiff made "general allegations" about collecting "data" and "information"); *Hughes*, 2024 WL 5179916, at *5 (plaintiff lacked standing where she did "not clearly allege what personalized information of hers was actually collected"); *Khamooshi*, 2025 WL 1408896, at *3 (no standing where plaintiff made "vague" allegations about categories of information collected but "fail[ed] to provide any more detail").

Plaintiffs must allege specific "details surrounding [their] use of the [w]ebsite and what specific information was captured" to establish standing. *Hughes*, 2024 WL 5179916 at *4. Here, Plaintiffs make no specific allegations about their use of the adidas website and the type of information adidas allegedly captured ***from them***

through the Cookies. Nowhere do they allege the "basic facts" needed to find Article III standing, including "when and how many times [plaintiffs] visited the site, what information [they] provided, [or] what information [adidas] captured[.]" *Heiting*, 2025 WL 736594 at *3. Instead, their allegations focus only on the type of information the Cookies ***could*** collect from ***users generally***. As set forth below, Plaintiffs' allegations as to the TikTok Pixel and Microsoft Bat Bing Tracker are insufficient to confer standing:

| Cookie | Allegation | Deficiencies |
|---|---|---|
| TikTok Pixel | "[E]nables website owners to track users' interactions with the website," including "timestamp, IP address, unique identifiers, device details, and browser information." (Compl. ¶ 30.) | Plaintiffs make no allegation that the TikTok Pixel collected this information ***from them*** as opposed to the unspecified "users" referenced. |
| | Engages in "fingerprinting," which matches information from an adidas website user to "existing data from TikTok's database that has been gathered from other websites with the TikTok Pixel installed[.]" (*Id.* ¶ 31.) | No allegation that ***Plaintiffs'*** information was matched with information from other websites. |
| | "[L]ink[s] [data from websites] to the users' TikTok profile." (*Id.* ¶ 32.) | No representation as to whether any of the Plaintiffs have a TikTok account, or whether any of ***Plaintiffs'*** data was "link[ed]." |
| | "[U]ses TikTok's 'AutoAdvanced Matching' technology," which sends information like "name, date of birth, and address [] simultaneously to TikTok" when entered into a website. (*Id.* ¶ 34.) | No allegation that any Plaintiff ever entered their name, date of birth, address, or other information into the adidas website, much less if they did so, that their information was sent to TikTok. |
| | Adidas uses data collected from the pixel (which TikTok may share with third parties) "for analytics as well as for advertising purposes" without disclosing its uses on its | No allegation that ***Plaintiffs'*** data was used for advertising purposes or that Plaintiffs received any targeted ads as a result. Moreover, adidas discloses how personal |

| Cookie | Allegation | Deficiencies |
|---|---|---|
| | website. (*Id.* ¶¶ 35-36.) | information is used in its Privacy Policy. (*See* RJN, Exhibit 2.) |
| | Collection of data poses particular risk given TikTok's Chinese ownership. (*Id.* ¶¶ 38-42.) | No allegation that ***Plaintiffs*** suffered any harm at the hands of the Chinese government, or anything beyond pure speculation that data might be used improperly. |
| Microsoft Bat Bing Tracker | "[C]ollects the users' IP address and Microsoft cookie." (*Id.* ¶ 44.) | No allegation that ***Plaintiffs'*** computer and smartphone IP addresses and Microsoft cookies were collected, and no representation that Plaintiffs used Microsoft products and platforms where an MUID would be assigned. |
| | Uses collected data to "advertise and market to users, which includes sending promotional communications, targeting advertising, and presenting users with relevant offers." (*Id.* ¶ 46 (citation omitted).) | No allegation that ***Plaintiffs*** ever received promotional communications, targeted advertising, or relevant offers related to their interactions with the adidas website. |

### B. Plaintiffs' CIPA § 638.51(a) Claim Fails Under the Statute's Plain Text

Plaintiffs fail to state a viable claim for a violation of § 638.51(a), primarily because adidas's routine use of the Cookies does not equate to use of a "pen register" under the statute. Moreover, even if the Cookies ***were*** pen registers, adidas's use falls under an exemption to the statute because both adidas and Plaintiffs consented to their use.

#### 1. The Cookies are not "pen registers"

Under CIPA, pen registers record all outgoing "dialing, routing, addressing, or signaling information" from a telephone or other device. § 638.50(b). Plaintiffs allege that the Cookies were "download[ed] […] onto Plaintiffs' web browsers"

(Compl. ¶ 57) and operate as pen registers because they are "devices or processes that captured […] [their] IP address" while they interacted with adidas's website (*id.* ¶ 69 (internal quotation marks and citations omitted)). But pen registers don't capture only ***certain specific*** outgoing information like IP addresses when someone is browsing on a ***specific*** website. They are technologies ***installed on devices*** that allow law enforcement to identify ***all*** outgoing communications ***from that device***.

In a criminal case involving use of a pen register for "computer surveillance" of a criminal defendant, the pen register collected "the to/from addresses of his email messages, the [IP] addresses of the websites that he visited and the total volume of information transmitted to or from his account." *United States v. Forrester*, 512 F.3d 500, 504 (9th Cir. 2008); *see also Smith v. Maryland*, 442 U.S. 735, 737 (1979) (pen register recorded all phone numbers dialed from criminal defendant's telephone); *United States v. Giordano*, 416 U.S. 505, 549 (1974) (same). This is a far cry from what Plaintiffs allege here. They only allege that the Cookies captured the IP addresses associated with their computers and smartphones while they were browsing on adidas's website. They make no allegation that the Cookies capture all outgoing communications from their devices, including information from other websites. They don't even allege that adidas captures all outgoing information from their devices when interacting with the adidas website.[8] The Cookies therefore do not comport with the definition of pen registers CIPA meant to regulate.

Plaintiffs' additional allegations that the TikTok Pixel "collects as much

[8] Plaintiffs only specifically allege that adidas captures IP addresses from their computers and smartphones through use of the Cookies. The Complaint, however, also includes scattershot allegations that the Cookies ***may*** collect certain information from unspecified users comprising timestamps (Compl. ¶ 30), "unique identifiers" (*id.* ¶¶ 3, 24, 30, 44, 45), "device details" (*id.* ¶ 30), and "browser information" (*id.* ¶¶ 3, 24, 30). These allegations still fall short of alleging that the Cookies collect ***all*** outgoing information, which is necessary for them to be considered pen registers. *See Forrester*, 512 F.3d at 504 (pen register recorded the IP address of ***every*** website that the criminal defendant visited).

information as possible about the [a]didas [w]ebsite user" through its "fingerprinting" process (Compl. ¶ 31) as well as data like "name, date of birth, and address" through "AutoAdvanced Matching" (*id.* ¶ 34) also fail to plead a CIPA claim. Section 638.50 only prohibits collecting "dialing, routing, addressing, or signaling information." § 638.50(b). It therefore regulates only "identifying information ***about*** a communication" — "the 'who,' 'when,' and 'where' of communications—but not the 'what'." *Kishnani*, 2025 WL 1745726, at *4 (citation omitted). Substantive "information" collected through "fingerprinting" or "Advanced AutoMatching" thus surpasses the reach of § 638.51. *See id.* (dismissing § 638.51 claim because information collected through "fingerprinting" and "Advanced AutoMatching" is not the type of information covered by the statute).

In a final attempt to squeeze the Cookies into the scope of § 638.51, Plaintiffs allege that the Cookies are "process[es] to identify the source of electronic communication by capturing ***incoming*** electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users." (Compl. ¶¶ 37, 48 (emphasis added).) But this describes what would be a ***trap and trace device*** (collecting incoming information) installed on ***adidas's*** website—not a ***pen register*** (collecting outgoing information) installed on ***Plaintiffs' devices***.[9] Plaintiffs cannot reasonably allege that adidas violates § 638.51 by installing a trap and trace device ***on its own website***. *See Aviles v. LiveRamp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025) (finding similar allegations that

---

[9] These minimal allegations directly contradict Plaintiffs' singular allegation that adidas violates CIPA by installing the Cookies "which are pen registers" on "Plaintiffs' and Class members' browsers." (Compl. ¶ 70; *see also id.* ¶¶ 19, 57, 69.) Plaintiffs' confused pleading violates the mandates of Rule 8, which requires that each pleading include a "short and plain statement of the claim" and that each allegation be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Rule 8 thus requires dismissal where pleadings are "confusing," "distracting, ambiguous, and unintelligible." *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011).

defendant collected incoming information from visitors to the website "equivalent of if Defendant had used a trap and trace device on its *own* website, rather than on Plaintiff's device" (emphasis in original)).

Plaintiffs' cited cases finding that website trackers are pen registers (or trap and trace devices) under CIPA are distinguishable. In *Greenley v. Kochava, Inc.*, an early § 638.51 decision, defendant was a data broker that collected "consumer's usernames, customer emails and customer IDs on their [smartphones]," "search terms used by a device user," and "a user's activities within an app after it has been installed." 684 F. Supp. 3d 1024, 1035 (S.D. Cal. 2023). Similarly, in *Zarif v. Hwareh.com, Inc.*, plaintiff alleged that software captured all "real-time communications," including sensitive medical information, while visiting a website. No. 23-cv-0565-BAS-DEB, 2025 WL 486317, at *1 (S.D. Cal. Feb. 13, 2025). These wide-ranging data collection practices are far more analogous to a traditional pen register that collects all outgoing information from a device. By contrast, Plaintiffs only specifically allege that adidas collected only IP addresses from their devices while they were on the adidas website. In *Moody v. C2 Educational Sys. Inc.*, the court mainly addressed arguments adidas does not raise here, namely, that a pen register must be installed on a telephone, finding the interpretation "limited" in light of CIPA's statutory text. 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024).

Plaintiffs' allegations are both under- and over-inclusive. They don't plead that the Cookies capture enough information to qualify as pen registers. Yet when they try to plead that the Cookies capture more information, that information is not the "dialing, routing, addressing, or signaling information" the statute was meant to cover. § 638.50(b). Because Plaintiffs do not meet the requirements of a pen register under the plain text of the statute, their CIPA claim must fail.

### 2. adidas may lawfully use a pen register because it is the "user" of the technology

Even if the Court concludes that the Cookies are pen registers (they are not), Plaintiffs fail to state a claim because adidas is a "user" of the Cookies and can therefore consent to their use under CIPA. Section 638.51 provides that "[a] provider of electronic or wire communication service may use a pen register […] [i]f the consent of the user of that service has been obtained." § 638.51(b)(5). Here, the alleged third-party trackers—the Cookies—can be considered "electronic or wire communications service[s]" (§ 638.50(b)) because they operate on the internet and Plaintiffs allege that they provide "targeted advertising" as a service. (Compl. ¶¶ 29, 35-36, 45-46, 57.) adidas's consent to their use on its own website is sufficient to qualify it for the exemption.

Courts interpreting an analogous exemption under the federal Wiretap Act (Electronic Communications Privacy Act ("ECPA"))[10] have concluded that a website operator's consent precluded claims under the statute.[11] Like CIPA, ECPA "does not apply with respect to conduct authorized […] by a user of that [wire or electronic communications] service." 18 U.S.C. § 2701(c). In *In re DoubleClick Inc. Privacy Litigation*, the court applied the exemption to hold that a website operator, as the "user" of the internet (the "electronic communications service") could consent to the installation of cookies on its own website. That was sufficient to foreclose plaintiffs' ECPA claim. 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001).

### 3. Plaintiffs consented to adidas's use of the Cookies

Plaintiffs' consent to use of the purported pen registers also defeats their claim. *See* § 628.51(b)(5) (creating an exception to liability when a user consents).

---

[10] 18 U.S.C. § 2510 *et seq*.

[11] Courts routinely analyze violations of ECPA and CIPA together. *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) ("[A]nalysis for a violation of CIPA is the same as that under the federal Wiretap Act." (citation omitted)).

While Plaintiffs (implausibly) deny providing that consent (Comp. ¶¶ 49-54), they simultaneously acknowledge that adidas's Privacy Policy "describe[s] that cookies and other tracking technologies are implemented on the browser in order to collect and store data" (*id.* ¶ 50). The Privacy Policy is incorporated into adidas's Terms and Conditions, which is binding on all visitors to the website. (RJN, Exhibit 2; *see* Section II.A.) Plaintiffs have therefore consented to the complained-of conduct.

Plaintiffs' apparent quibble is therefore not with the provisions of the Terms and Conditions or disclosures in the Privacy Policy; it is with whether visitors would be on notice of them if "there was no pop-up window or other notification" and the hyperlinks were "not readily visible or highlighted." (Compl. ¶¶ 49-51.) Plaintiffs point to no requirement that adidas make users interact with a pop-up to visit the website or otherwise "highlight[]" the terms. (*Id.*) And they ignore that a contract entered on the internet—like the contract Plaintiffs entered into when using the adidas website—is enforceable if it put a website user on actual or inquiry notice of the site's terms. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

The disclosures in adidas's Privacy Policy, which again is incorporated into the binding Terms and Conditions, are more than sufficient to put a reasonable person on notice that adidas uses the Cookies and could share collected information with third parties. (*See* RJN, Exhibit 2, Section II.A.); *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (it is enough that "a 'plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink" to agree to "[a] binding contract" (citation omitted)). Moreover, adidas fully complies with the relevant statute, CalOPPA, which requires website operators to publish a privacy policy hyperlinked on the website's home page—it is not required to further "highlight" the link to the policy. Cal. Bus. & Prof. Code § 22575 *et seq.* Several courts have found that similarly "visible" privacy policies "can establish consent to the alleged conduct challenged under

various states [*sic*] wiretapping statutes and related claims." *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (collecting cases). The Privacy Policy and Terms and Conditions are clearly hyperlinked in the footer of every page of the website—an obvious location comporting with widespread practice across the internet. It is therefore unlikely that Plaintiffs failed to see them at all. Indeed, Plaintiffs make no specific allegation about whether ***they*** failed to notice the terms, further undermining any claim that the policy wasn't sufficiently noticeable. Plaintiffs therefore consented to the policy's terms by virtue of using the website, and their consent forecloses their CIPA claim.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: July 16, 2025

MORRISON & FOERSTER LLP

By: */s/ Purvi G. Patel*
Purvi G. Patel

***Attorneys for Defendant adidas America, Inc.***