Jonathan D. Uslaner (Cal. Bar No. 256898)
(jonathanu@blbglaw.com)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Plaintiffs*

[Additional counsel listed on signature page.]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MAEVE CAMPLISSON; DAVID SANCHEZ;, and S.D., a minor, by and through their legal guardian ELVIS DICIERO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ADIDAS AMERICA, INC., an Oregon corporation,

Defendant.

Case No.: 3:25-cv-00603-GPC-KSC

*Assigned to the Hon. Gonzalo P. Curiel*

**PLAINTIFFS' OPPOSITION TO DEFENDANT ADIDAS AMERICA INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE §638.51)**

Date: October 10, 2025
Time: 1:30 p.m.
Courtroom: 12A

Filed concurrently with:

1. *Declaration of Avi Josefson*
2. *Request for Judicial Notice*

# TABLE OF CONTENTS


**Page**

INTRODUCTION ....... 1

STATEMENT OF FACTS ....... 4

ARGUMENT ....... 5

A. Plaintiffs Have Standing to Enforce Their Right to Privacy ....... 6

1. Plaintiffs Have Standing Under CIPA Section 638.51 ....... 6

2. Plaintiffs' Claims Are Consistent with Traditional Privacy Harms ....... 9

B. The Web Trackers Are "Pen Registers" Under CIPA That Adidas May Not Lawfully Use. ....... 15

C. Plaintiffs Did Not Consent to Web Tracking ....... 22

CONCLUSION ....... 24

# TABLE OF AUTHORITIES


**CASES** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5, 6

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. June 29, 2016)....8, 11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....9

*Byars v. Sterling*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)....8

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)....13, 14

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025)....23

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)....passim

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025)....8, 11, 14

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....21

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)....12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....3, 9

*Friddle v. Epstein*,
21 Cal. Rptr. 85 (Cal. Ct. App. 1993)....7

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....7

*Grace v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023)....11

*Greenley v. Avis Budget Group Inc.*,
2020 WL 5230471 (S.D. Cal. Sept. 2, 2020)....................8

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................1, 17

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. Oct. 6, 2023)....................13

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................12

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025)....................13, 14

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. 2024)....................13

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (C.D. Cal. 2023)....................22

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. Nov. 8, 2023)....................17

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022)....................16, 18

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025)....................12

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025)....................20, 21

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Sup. Mar. 13, 2024)....................14, 15

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)....................17

*Meredith v. Oregon*,
321 F.3d 807 (9th Cir. 2003)....................15

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................passim

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......................................passim

*Moretti v. Hertz Corp.*,
2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) .......................................23

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......................................3, 23

*Osgood v. Main Street Marketing, LLC*,
2017 WL 131829 (S.D. Cal. Jan. 13, 2017) .......................................2, 8

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......................................13

*Ribas v. Clark*,
38 P.2d 637 (Cal. 1985) .......................................7, 16

*Riganian v. Liveramp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. Jul. 18, 2025) .......................................16

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......................................9

*Ryan S. v. UnitedHealth Group, Inc.*,
98 F.4th 965 (9th Cir. 2024) .......................................6

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......................................passim

*Smith v. LoanMe, Inc.*,
483 P.3d 869 (Cal. 2021) .......................................16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......................................10, 11

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......................................20

*Usher v. City of Los Angeles*,
828 F.2d 556 (9th Cir. 1987) .......................................6

*Wakefield v. ViSalus Inc.*,
51 F.4th 1109 (9th Cir. 2022) .......................................9, 10

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 22

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 2, 7, 18, 20

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 19

**STATUTES**

Cal. Penal Code §630 .......... 16

Cal. Penal Code §631 .......... 16

Cal. Penal Code §638.50 .......... passim

Cal. Penal Code §638.51 .......... passim

**OTHER AUTHORITIES**

Crimes: invasion of privacy, Cal. S., S.B. 690 (2025) .......... 21, 22

**INTRODUCTION**

Defendant operates the Adidas Website, which uses technology provided by third parties (TikTok and Microsoft) to secretly collect personally identifiable information from every person who visits the website, including Plaintiffs and the Class. That information is shared with TikTok and Microsoft, which combine the information secretly gathered from the Adidas Website with data gathered elsewhere to build robust profiles of every Class member. Adidas's motion to dismiss does not deny the use of such technology on the Adidas Website, that this information is secretly shared with TikTok and Microsoft, or that Adidas lacked express consent from Plaintiffs and the Class for the collection or sharing of this information.[1]

Numerous courts in this Circuit have held that the spying technology used by Adidas constitutes a "pen register" under Section 638 of the California Invasion of Privacy Act ("CIPA"), and that website users whose information is secretly collected by such technology have standing to assert claims for statutory damages under CIPA. *Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1040 (S.D. Cal. 2023). Strikingly absent from Adidas's motion is the fact that what it describes as "trending" CIPA litigation includes multiple court opinions finding that the very technology that Adidas uses to spy on its customers violates CIPA. Def. Br. at 2-3. Indeed, the central thesis of Adidas's motion is that the Microsoft "Bat Bing" and TikTok "Pixel" web trackers used by Adidas to spy on consumers are not "pen registers" under CIPA, an argument that has been flatly rejected by multiple courts:

- *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (Castillio, M.J.) (web trackers are pen registers in violation of CIPA);

---

[1] Capitalized terms not otherwise defined have the same meaning as set forth in Plaintiffs' Corrected Class Action Complaint for Violations of the California Invasion of Privacy Act (Cal. Penal Code §638.51) (the "Complaint") (ECF No. 3). References to "Def. Br." are to Defendant's Motion to Dismiss Plaintiffs' Corrected Class Action Complaint (ECF No. 19). Unless otherwise specified, all emphasis is added, and all internal quotations and citations are omitted.

- *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (Castillio, M.J.) (TikTok Pixel constitutes a pen register in violation of CIPA);
- *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11-12 (S.D. Cal. Feb. 13, 2025) (Bashant, J.) (Meta Pixel constitutes a pen register in violation of CIPA);
- *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (Breyer, J.) (web trackers are pen registers in violation of CIPA); and
- *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) (Lin, J.) (web trackers are pen registers in violation of CIPA).

Defendant relies on irrelevant case law, such as its repeated citation of cases from other courts interpreting distinct federal statutes unrelated to CIPA. *See, e.g.*, Def. Br. at 20. Whether other courts would interpret unrelated statutes to define other spy technology as a "pen register" has no bearing on the application of CIPA to the Web Trackers used by Adidas that are at issue in this case. Defendant wrongly contends that Plaintiffs are asking this Court to "expand CIPA" to apply it to the technology at issue (Def. Br. at 4), when in fact the overwhelming weight of authority in this District and throughout this Circuit is that Adidas's spy technology constitutes a "pen register" under CIPA.

Those recent CIPA cases also make clear that CIPA Section 638.51 does not require plaintiffs to have incurred pecuniary harm separately from the collection of their personally identifiable information. "Federal district courts have consistently found that ***violations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact*** because instead of a bare technical violation of a statute, a CIPA violation involves a violation of privacy rights." *Conohan*, 2025 WL 1111246, at *5; *Osgood v. Main Street Marketing, LLC*, 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017) (Curiel, J.) ("District courts as well as this Court have held that allegations of violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact"). Adidas's argument that its spying on users does

not give rise to a traditional privacy harm is wrong, as this Court and the Ninth Circuit have held the opposite. *See, e.g., In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook Internet*"). Perhaps recognizing this, Adidas offers up new standing test with additional requirements. But even under Adidas's proffered test, Plaintiffs have stated a claim.

In any event, Plaintiffs here do allege a quintessential "concrete harm" for standing (an economic injury (¶¶2-3)) along with detailed allegations about how that injury occurred. Plaintiffs allege that they visited the Adidas Website and explain the information that Adidas's spy technology – the TikTok Pixel and Microsoft Bat Bing Tracker – secretly collected from Plaintiffs and other users and sent to TikTok and Microsoft. ¶¶24-48. This includes IP addresses, unique identifiers, browsing information, device details (make, model, operating system), browser information, and each user's Microsoft ID. ¶¶3, 24, 30. Microsoft and TikTok compile the user information surreptitiously captured from the Adidas Website with information gathered from other websites, highlighting the privacy concerns implicated by Adidas's violations of CIPA. ¶¶30-48. This is sufficient. *Facebook Internet.*, 956 F.3d at 598.[2]

Last, Defendant argues that Plaintiffs somehow consented to Adidas's surreptitious spying. But even the cases Defendant cites make clear that the buried link to the website privacy policy at the bottom of the Adidas Website which required no affirmative user consent or other action from the user could not possibly constitute sufficient consent as a matter of law at the pleading stage. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

For these reasons, as set forth more fully below, Defendant's motion should be denied.

[2] Citations to "¶_" are to the Complaint (ECF No. 3).

**STATEMENT OF FACTS**

The Adidas Website is used to market and sell products to California residents, market the Adidas brand, and to advertise the numerous Adidas retail locations throughout California. ¶¶1, 2. Adidas uses the Adidas Website to secretly spy on Californians, collecting a host of personally identifiable data from every user who visits the Website. ¶¶3, 5. Users do not consent to this collection and sharing of information. ¶¶5, 49-53. Defendant uses the collected information to enhance its marketing efforts and also shares that information with TikTok and Microsoft. ¶¶3, 24.

Adidas uses two forms of spy technology to collect this information from visitors to the Adidas Website: the TikTok Pixel and the Microsoft Bat Bing Tracker (collectively, the "Web Trackers"). ¶3. The Web Trackers are examples of "Third-Party Trackers" which "collect and send information about a user's browsing history to other companies." ¶22, n.1. The information collected by the TikTok Pixel and Microsoft Bat Bing Trackers includes IP addresses, unique identifiers, timestamps, device information, and browser information. ¶¶3, 24, 30. Both Web Trackers operate by inserting a tracker onto the web browser of every visitor to the Adidas Website. ¶¶26-27. The Complaint details the personally identifiable information that Adidas secretly collects from everyone that visits the Adidas Website:

- "Adidas secretly utilized various trackers, including the TikTok Pixel and Microsoft Bing (together, the 'Trackers'), to collect their IP addresses, unique identifiers, and browsing information." ¶3.

- "Adidas has implemented the Trackers on its website in order to collect users' IP addresses, unique identifiers, and browsing information, and then share the information with TikTok and Microsoft without informing the website user or obtaining consent." ¶24.

- "Per TikTok, the TikTok Pixel gathers information about IP addresses in order to 'determine the geographic location of an event' on a website that has the TikTok Pixel installed." ¶24, n.3.

- "The pixel also collects and reports supplementary metadata, including timestamp (when an action took place), IP address (which can be used to determine the geographic location of the user), unique identifiers (which are assigned to a user's device or browser session that distinguish one user from another), device details (make, model, operating system), and browser information." ¶30.

- "The TikTok Pixel also engages in a process known as 'fingerprinting,' through which it collects as much information as possible about the Adidas Website user and matches that information to the existing data from TikTok's database that has been gathered from other websites with the TikTok Pixel installed." ¶31.

- "The Microsoft Bat Bing Tracker places the bat.bing cookie on a user's browser, which collects information about the user" including "an individual's Microsoft ID" which is a unique identifier that Microsoft "generates and assigns to a specific browser to track users' activity across the internet." ¶¶43-44.

Adidas shares the information it secretly gathers with both Microsoft and TikTok. ¶¶24, 29-34, 43. Both companies compile the user data collected from the Adidas Website with user data taken from other websites to build comprehensive profiles about each user. ¶¶22, 35-36, 44-46. As noted, the personally identifiable information gathered by the Microsoft Bat Bing Tracker includes a "Microsoft ID" – a unique identifier assigned to every user on whom Microsoft collects data. ¶¶43, 45. TikTok similarly aggregates user data using its "fingerprinting" process. ¶31. TikTok shares this data, including the information secretly gathered from the Adidas Website, with undisclosed third parties. ¶36. The collection of personally identifiable information by TikTok itself presents significant concerns given the control exerted over TikTok by the Chinese government. ¶¶38-42. Indeed, there is evidence that TikTok employees have used the information it gathers from websites like the Adidas Website to surveil Americans and target journalists. ¶¶41-42.

## ARGUMENT

To survive a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 663 (2009). Factual allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party. *Ryan S. v. UnitedHealth Group, Inc.*, 98 F.4th 965, 970 (9th Cir. 2024). Indeed, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "The motion should be denied if the claim is plausible on its face, that is, if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ryan S.*, 98 F.4th at 970 (quoting *Iqbal*, 556 U.S. at 678).

**A. Plaintiffs Have Standing to Enforce Their Right to Privacy**

Defendant raises three arguments to challenge Plaintiffs' standing: that Plaintiffs (1) have only alleged a "procedural violation" of CIPA that does not establish standing under Article III or CIPA; (2) that Plaintiffs' alleged injury is at odds with "traditional privacy harms" and CIPA's legislative intent; and (3) that Plaintiffs must allege more detailed facts to establish concrete harm. Def. Br. at §A.1-3. None of these arguments have merit.

**1. Plaintiffs Have Standing Under CIPA Section 638.51**

Plaintiffs allege that they visited the Adidas Website (¶¶10-12) and that Adidas surreptitiously captured their user information (¶¶24-27, 30-32, 34-35). They further allege that this secret collection of their personally identifiable information caused them harm, as that information has value—indeed, that is why Adidas collects it—and Plaintiffs were not compensated for it. ¶¶2-3, 54-57. Despite Adidas's concession that such conduct as alleged constitutes a "procedural violation" of CIPA, nothing in the text of CIPA, or in the numerous cases that upheld CIPA claims based on privacy violations identical to those perpetrated by Adidas, requires anything more to establish standing. *See, e.g. Conohan*, 2025 WL 1111246, at *6 (allegations that the TikTok pixel "'collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data'"

including "'device and browser information, geographic information, referral tracking, and url tracking'" and that the pixel "'scans every website for information, such as name, date of birth, and address'" were "more than sufficient to demonstrate standing at this stage of the case"); *Moody*, 742 F. Supp. 3d at 1078 (finding "no credible dispute" as to standing where complaint alleged that the defendants' website installed the TikTok pixel, the TikTok pixel collected user data, and the plaintiff visited the website). Neither does the statute or caselaw make some distinction or liability exception for a "procedural violation."

To the contrary: courts applying CIPA have rejected the requirement for an independent injury, finding that the CIPA provision authorizing civil actions "'is fairly read as establishing that no violation of . . . [CIPA] is to go unpunished'" because "'[a]ny invasion of privacy involves an affront to human dignity'" and that CIPA's "manifest legislative purpose [is] to accord every citizen's privacy the utmost sanctity." *In re Google Inc.*, 2013 WL 5423918, at *17 (N.D. Cal. Sept. 26, 2013) (quoting *Friddle v. Epstein*, 21 Cal. Rptr. 85, 92 (Cal. Ct. App. 1993) and *Ribas v. Clark*, 38 P.2d 637, 644 (Cal. 1985)). In the specific context of the pen register provision of CIPA (Cal. Penal Code §638.51), in this Circuit, "[f]ederal district courts have consistently found that 'violations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact because instead of a bare technical violation of a statute, a CIPA violation involves a violation of privacy rights.'" *Conohan*, 2025 WL 1111246, at *5. *Conohan*, one of the many cases that are directly on point yet simply ignored by Defendant, makes clear that CIPA standing does not require Plaintiffs to have incurred any harm other than the violation of their rights. *Zarif*, *Moody*, *Mirmalek*, and *Shah* are all in accord.

Indeed, Defendant entirely ignores numerous decisions from this Court similarly finding standing in CIPA cases with similar allegations, including the improper use of the TikTok "Pixel" program here as amounting to an "[i]nvasion of the right to privacy, a legally protected interest that is concrete and particularized,

'has long been actionable at common law' and 'encompass[es] the individual's control of information concerning his or her person.'" *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *3-4 (S.D. Cal. June 13, 2025) (Curiel, J.) (finding CIPA standing for case alleging improper data collection by TikTok "Pixel"); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *8 (S.D. Cal. June 29, 2016) (Curiel, J.) (finding CIPA standing because "a violation of CIPA involves more tangible rights than a technical violation" of a statute because it "implies a violation of privacy rights"); *Osgood*, 2017 WL 131829, at *7 (violation of CIPA constitutes injury in fact).

Defendant's cases are not to the contrary. For example, in *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) which involved wiretapping claims under CIPA Sections 631(a) and 632.7, the court's conclusion that the plaintiff lacked standing turned on undisputed evidence that the defendant had not recorded the plaintiff's information. Specifically, the court found that "Defendant produces uncontroverted declaration testimony" that "there is no evidence that Plaintiff engaged in any communication with Defendant's chat feature, much less that she disclosed private information or was injured by any conduct of Defendant." *Id.* at *2. Putting aside that *Byars* involved a different statutory provision that turns on the collection of different information, no such evidentiary dispute is at issue here, where the Complaint alleges with particularity the information that Defendant secretly collected in violation of CIPA Section 638.51. ¶24 (Adidas collected "users' IP addresses, unique identifiers, and browsing information").

Along similar lines, *Greenley v. Avis Budget Group Inc.* is not applicable here because the issues before this Court had nothing to do with standing under CIPA or the many cases finding standing for CIPA violations for the secret collection of data like that alleged here noted above. 2020 WL 5230471, at *5 (S.D. Cal. Sept. 2, 2020). In any event, *Avis* and Defendant's other cases are distinguishable because,

contrary to Defendant's argument (Def. Br. 8), the Complaint ***does*** allege a concrete economic injury; Plaintiffs allege that their personally identifiable information has value, that Defendant collected and used that information without their knowledge or consent, and Plaintiffs were not compensated. ¶¶2-3, 54-57. This is exactly what Defendant wrongly argues is missing, and these allegations constitute a concrete injury under Article III. *See, e.g., Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (plaintiffs had standing because they were not compensated for their data); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) (similar).

**2. Plaintiffs' Claims Are Consistent with Traditional Privacy Harms**

Even if the statutory text of CIPA did not explicitly confer standing for statutory violations alone, numerous courts in this jurisdiction have held that plaintiffs can show harm based on data collection similar to that alleged in this case. In fact, a long line of Ninth Circuit decisions have held this and found that Plaintiffs have a reasonable expectation of privacy in their browsing data. *See, e.g., Facebook Internet*, 956 F.3d at 598 (9th Cir. 2020) ("[V]iolations of the right to privacy have long been actionable at common law"); *Wakefield v. ViSalus Inc*., 51 F.4th 1109, 1117 (9th Cir. 2022) (privacy violation constitutes a concrete injury in fact).

Moreover, Adidas's use of Plaintiffs' data constitutes an Article III injury because it has not compensated Plaintiffs for the collection and use of that data. *Brown v. Google LLC* recognized this when it held that Plaintiffs had standing because they had "a stake in the value of their misappropriated data." 685 F. Supp. 3d at 940 (N.D. Cal. 2023); *accord Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025). Here, Plaintiffs have alleged that Adidas collected Plaintiffs' information without meaningful user consent. ¶¶2-3, 54-57. This suffices to confer standing to Plaintiffs under both CIPA and common law. Additionally, *Brown* recognized that intangible harms may be sufficiently concrete to constitute a damage

or loss. 685 F. Supp. 3d at 940. Indeed, intangible harms such as "disclosure of private information" or "intrusion upon seclusion" are traditional harms that confer standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) ("The complaint need not include economic injury to establish standing for the intrusion upon seclusion, invasion of privacy, or unjust enrichment claims").

Undeterred, citing *TransUnion*, Defendant claims that in order to establish an injury, Plaintiffs must allege that the information Defendant collected was (1) uniquely "sensitive" and (2) "disseminated or misused." Def. Br. at 10 (citing 594 U.S. at 424). But this test is not the one articulated in *TransUnion*, which broadly held that an injury is concrete if there a close historical or common law analogue for a plaintiff's asserted injury. *Id.* The Ninth Circuit and this Court have found that the CIPA violations Plaintiffs allege here are entirely consistent with *TransUnion* and do not require Plaintiffs to satisfy Defendant's proffered additional requirements.[3]

To the contrary, *TransUnion* did not raise the bar to assert standing under data privacy statutes, and the Ninth Circuit has recognized this. Like here, the defendant in *Wakefield v. ViSalus Inc*. argued that plaintiffs alleging violations of the Telephone Consumer Protection Act ("TCPA") (which prohibits "robocalls" without prior express consent) lacked Article III standing under *TransUnion*. 51 F.4th at 1117. The Ninth Circuit rejected this argument, holding that *TransUnion* did not undermine the prior cases upholding Article III standing in cases alleging violations of the TCPA and similar statutorily-based privacy cases but, in fact, "strengthens the principle that an intangible injury is sufficiently concrete" in light

[3] Defendant's attempt to apply the standard for a California Constitutional privacy claim as stated in *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) to the CIPA context is unavailing, since that case allowed the plaintiff's CIPA claim to proceed. Def. Br. at 10.

of the fact that "(1) Congress created a statutory cause of action for the injury and (2) the injury has a close historical or common-law analog." *Id.* at 1118. In so ruling, the court acknowledged the widespread recognition among states of the right to privacy. *Id.* So too here, as the California legislature created the CIPA cause of action, and the injury suffered has a close analogue to privacy violations long recognized under the common law. *Id.*

Following *Wakefield*, courts in this district, including this one, have rejected the notion that *TransUnion* somehow "undermined the reasoning" of California federal cases holding that "violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact" because a CIPA violation, by its nature, is "a violation of privacy rights" which is a "concrete and particularized harm." *Grace v. Build.com, Inc.*, 2023 WL 4535531, at *3-4 (S.D. Cal. July 13, 2023) (reaffirming that *TransUnion* did not undermine cases finding CIPA violations constitute concrete injury-in-fact and citing cases); *see also Call-On DOC, Inc.*, 2025 WL 1677632, at *4 & n.3 (finding CIPA standing and rejecting argument that *TransUnion* overruled *Facebook Internet*'s holding that a statutory CIPA violation establishes Article III standing, noting that no subsequent "Ninth Circuit panel has […] expressed any doubt as to its precedential value"); *Bona Fide Conglomerate*, 2016 WL 3543699, at *8.[4]

---

[4] The actual analysis applied in *TransUnion* does not support Adidas's argument either. There, the Supreme Court distinguished between purported class members about whom TransUnion disseminated erroneous credit information to third parties, and class members whose credit reports included errors but had not been disseminated. 594 U.S. at 434-435. The Court found that the latter lacked standing, but that the former, whose claim arose from a violation of the Fair Credit Reporting Act and who did not claim to have incurred any monetary or otherwise quantifiable harm from the dissemination of erroneous credit information, had standing to sue TransUnion for its statutory violation. *Id.* Here, Plaintiffs allege that Defendant collected a host of personally identifiable information, actually used that information to refine and target their advertising to the Class, and shared that information with

In any event, even under Defendant's proffered test for standing in CIPA actions, Plaintiffs have standing because they have alleged that the information Adidas collected was both (1) uniquely "sensitive" and (2) "disseminated or misused." Def. Br. at 10.

***The Data Defendant Collected Was Personal and Sensitive***. Adidas provides a chart of the kinds of information alleged in the Complaint in which it posits that Plaintiffs have no reasonable expectation of privacy at common law.[5] Def. Br. at 11. Plaintiffs allege that Adidas collected unique identifiers, browsing information, fingerprinting information, and other information captured through TikTok's AutoAdvanced Matching technology. ¶¶3, 23, 30, 34. The Complaint further alleges that both Microsoft and TikTok combine this information with data gathered from other sources to build a robust profile of each user. ¶¶ 22, 32, 35-36, 44-46. Fingerprinting is the process through which the Adidas Website, with the help of the TikTok Pixel, matches information gathered by the Adidas Website with existing data on TikTok's database. ¶ 31. AutoAdvanced Matching is the process through which TikTok gathers personally identifying information such as "name, date of birth, and address" of individuals using the Adidas Website and curates advertisements for such users. ¶34.

Plaintiffs have an expectation of privacy in this information that Adidas collects, and common law recognizes this. Specifically, Plaintiffs have an

---

third parties, at least one of which (TikTok) discloses that it further shares such information with other parties. ¶¶22-49.

[5] Adidas also cites a variety of irrelevant cases that did not concern the categories of sensitive information here. *See Khamooshi v. Politico LLC*, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) (the plaintiff only alleged collection of IP addresses rather than the various categories of data in this case); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (same); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (same, but allowing CIPA claims to proceed despite dismissal of common law privacy claims).

expectation of privacy in device information, browsing history, and identifying information collected through TikTok's AutoAdvanced Matching technology and fingerprinting, as the case law recognizes. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 622 (N.D. Cal. 2021) (persistent identifiers, browsing history, IP addresses, and device information all fall under "the definition of personal information under California law"); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (finding that intrusion "which allegedly allowed NaviStone to associate Revitch's browsing habits with his identity, is a highly offensive breach of norms"); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 972 (C.D. Cal. Oct. 6, 2023) (holding that because "the Tiktok [software development kit] allows Defendants to assemble extensive profiles containing individuals' browsing histories across numerous websites [...] the Court cannot conclude at the pleading stage that the alleged privacy intrusion is not serious").

None of the cases in Adidas's chart hold otherwise, as the standing defects were personal to the plaintiffs in those actions and not applicable here. For example, in *Heiting v. FKA Distrib. Co.*, the plaintiff failed to allege "what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized." 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025). Similarly, in *Hughes v. Vivint, Inc.*, the plaintiff's allegations were nonspecific and conclusory, leading the court to conclude that she had not alleged an injury. 2024 WL 5179916, at *4 (C.D. Cal. 2024) ("For instance, Plaintiff claims that her email address and phone number were captured by Defendant. However, Plaintiff never alleges in her Complaint that she entered her email address or phone number into any fields on the Website"). Plaintiffs have not made similarly unsupported conclusory allegations. Def. Br. at 11.

Here, by contrast, Plaintiffs allege the types of information the Web Trackers collect (¶¶30-34, 43-48), confirm that this collection occurred without notice to Plaintiffs or other users (¶49), and explain why Plaintiffs believe their data was de-

anonymized (¶31 (alleging the TikTok Pixel collects information about Adidas Website visitors and matches it with data from other websites that have the TikTok Pixel installed); ¶44 (explaining that the Bat Bing Tracker collects Microsoft IDs, which "can be used to identify individuals")). This is sufficient. *Calhoun*, 526 F. Supp. 3d at 622; *Call-On DOC*, 2025 WL 1677632, at *3-4. Furthermore, the plaintiff in *Heiting* was able to file an amended complaint that successfully asserted standing by asserting that "the software effectively de-anonymizes the website user and has collected tracking information on her." *Heiting*, 2025 WL 1430663, at *2.

***Plaintiffs Allege Defendant Improperly Shared Their Data***. Defendant next argues that Plaintiffs have not adequately alleged their information was shared or misused. Def. Br. at 12-13. But this is incorrect, as the Complaint alleges this in detail. ¶¶24, 29-36, 43-46. Again, Plaintiffs' harm was incurred by the secret collection and use of their personally identifiable information, including because Plaintiffs were not compensated for or told about it, which alleges a concrete harm and establishes standing regardless of any particularized "misuse."

***Plaintiffs' Claims Are Entirely Consistent with CIPA's Legislative Intent.*** Grasping at straws, Defendant also asks the Court to find a lack of standing because, it contends, the "pen register" statute should not apply to the internet, and warns that its enforcement here could lead to a parade of horribles, including by causing the internet to "cease to function." Def. Br. at 13-14. But as further explained below, Defendant ignores the overwhelming case law holding that Plaintiffs' claims here are precisely those contemplated by the pen register statute, and obviously the similar claims sustained by those courts (and this one) has not led to the end of the internet.[6]

[6] Defendant's reliance on *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Sup. Mar. 13, 2024) is misplaced. In that case, the plaintiff's bare-bones complaint contained no specific information about the "device" or "process" purportedly used on the defendant's website, instead relying on a conclusory

***Plaintiffs Have Alleged Sufficient Detail.*** Last, Adidas contends that Plaintiffs must allege more detailed facts to establish concrete harm. But all the purported "deficiencies" Adidas finds in Plaintiffs'' allegations are that they "focus only on the type of information the Cookies ***could*** collect from ***users generally***." Def. Br. at 15 (emphasis in original). Adidas then includes a page-long chart restating this argument with examples of Plaintiffs' allegations, essentially arguing that the allegations in the Complaint should have used the term "Plaintiffs" rather than "users." Def. Br. at 15-16. But the Complaint makes clear that Plaintiffs are "***users***" who visited the Adidas Website and whose information was therefore secretly collected by Defendant and shared with third-parties. *See* ¶¶10-12 (stating that Plaintiffs "visited the Adidas Website during the relevant period"). Furthermore, Adidas's statement that Plaintiffs have only alleged the type of information that its Web Trackers "***could***" collect is simply false. Def. Br. at 15; *See. e.g.*, ¶3 ("Each time a user visited the site, Adidas secretly utilized various trackers, including the TikTok Pixel and Microsoft Bing […] to collect their IP addresses, unique identifiers, and browsing information").

**B. The Web Trackers Are "Pen Registers" Under CIPA That Adidas May Not Lawfully Use**

CIPA prohibits the use of "pen registers" and "trap and trace" devices to spy on California residents. A "trap and trace device" is defined as "a device or process

---

allegation that the defendant used a pen register, which purportedly captured only IP addresses. Ex. 1 (*Licea* complaint); *Meredith v. Oregon*, 321 F.3d 807, 817 n.10 (9th Cir. 2003) (court can take judicial notice of pleadings). Absent any allegations regarding defendant's use of a particular device to capture plaintiff's IP address, the court found it "unclear from the conclusively pled complaint how Plaintiff's information was acquired" but granted leave to amend, *Licea*, 2024 WL 1698147, at *4, and the amendment was upheld. In stark contrast, the Complaint here provides extensive details about the nature and functionality of the TikTok Pixel and Microsoft Bat Bing Tracker Adidas used, including the information that goes beyond the mere IP addresses in *Licea*. ¶¶3, 24, 30, 43-44.

that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication." Cal Penal Code §638.50(c). Section 638.50 defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code §638.50(b). Notably, telephones are not mentioned in this section of the statute, whereas other sections of CIPA do include specific language regarding telephones. *See, e.g.*, Cal. Penal Code §§631(a). The application of CIPA to modern technologies was recently addressed in *Riganian v. Liveramp Holdings, Inc.*, 2025 WL 2021802, at *11 (N.D. Cal. Jul. 18, 2025). The Court noted that CIPA's pen register provision used expansive language and rejected the defendant's argument that CIPA was meant only to apply to telephones. "[I]f the drafters of Section 638.50 intended for 'pen register' to be limited to telephone technologies, they knew how to say so." *Id.*

CIPA squarely applies to the Web Trackers at issue. When it enacted CIPA to "protect the right of privacy of the people of" California, the California legislature recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications […] has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code §630. While the concept of a "pen register" may once have been limited to low-tech devices used in connection with telephone land lines, CIPA is regularly interpreted to apply to new technologies, including "Internet communications." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022). Moreover, as the Ninth Circuit observed in *Javier*, "the California Supreme Court has also emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." 2022 WL 1744107, at *2 (citing *Ribas v. Clark*, 696 P.2d 637, 639-41 (Cal. 1985)); *Smith v.*

*LoanMe, Inc.*, 483 P.3d 869, 879 (Cal. 2021).

To state a claim for a violation of CIPA's pen register provision, a plaintiff must allege that a "[d]efendant installed a pen register without a court order." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023). "Thus, at the motion to dismiss stage, the Court evaluates whether Plaintiff adequately alleges that 1) the third-party Trackers are 'pen registers,' as defined by CIPA, 2) Defendant installed pen registers, and 3) Defendant did so without a court order." *Mirmalek*, 2024 WL 5102709, at *3. The Complaint alleges that the Web Trackers used by Adidas to spy on users of the Adidas Website are "devices or processes" that record routing, addressing and signaling information transmitted by the users' devices when they visit the Adidas Website. ¶4. Courts interpreting CIPA have made clear that "process can take many forms." *Greenley*, 684 F. Supp. 3d at 1050. In *Greenley*, the court held that "surreptitiously embedded software" constituted a "pen register." *Id.*[7] Judge Bashant wrote in *Greenley* that "the Court cannot ignore the expansive language in the California Legislature's chosen definition," and "the plain meaning of a 'process'" surely includes "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Id.*

Following *Greenley*, numerous courts have held that software embedded in a website that captures information that identifies the user that is the source of the transmissions to the website constitutes a "pen register" under CIPA. Such interpretations of CIPA comport with the intent of the statute, as recognized by the California Supreme Court: "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*,

[7] The Web Trackers can also constitute a "device" under CIPA. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. Nov. 8, 2023) (noting that software is a device because "in order for software to work, it must be run on some kind of computing device").

2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).[8] Accordingly, following her own prior opinion in *Greenley*, Judge Bashant held in *Zarif v. Hwareh.com, Inc.*, that the "Meta Pixel" provided by Meta (formerly Facebook), a third-party web tracker that is functionally identical to the TikTok Pixel and Microsoft Bat Bing Tracker, constituted a pen register, the use of which violated CIPA. 2025 WL 486317, at *11-12) (S.D. Cal. Feb. 13, 2025).[9]

Judge Bashant noted in the *Zarif* case that several other courts had concluded that similar spy technology embedded in websites constituted pen registers, the use of which violated CIPA. *Id.* at *12 (citing *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024)); *Mirmalek*, 2024 WL 5102709, at *3. The *Moody* case involved the TikTok Pixel, one of the same Web Trackers that Adidas used to spy on Plaintiffs and the Class. In *Moody*, Judge Klausner denied the motion to dismiss filed by operators of an educational website that used the TikTok Pixel to collect users' personal information without consent. 742 F. Supp. 3d at 1078. The court found that "Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of [CIPA] §§638.50 and 638.51" and therefore denied the motions to dismiss. *Id.* at

---

[8] *Matera*'s recognition of the need to construe CIPA broadly to effectuate the privacy protections intended by the legislature, and the Ninth Circuit's observation in *Javier* that CIPA must be read to apply to Internet technologies, rebuts Defendant's argument that CIPA's legislative history must be narrowly read to limit CIPA's application to telephonic communications.

[9] Defendant misconstrues the plain allegations of the Complaint to suggest that the Web Trackers cannot be pen registers because the Web Trackers are installed on the Adidas Website, rather than on the computers and devices of Plaintiffs and the Class. Def. Br. at 18. The Complaint clearly alleges that "When Plaintiffs and the other Class members visited the Adidas Website, the Adidas Website's code, at Adidas's direction, installed the Trackers onto the users' browser." ¶26; *see also*, ¶31 ("Once installed, the TikTok Pixel creates cookies on visitors' web browsers when they visit the website"); ¶43 ("The Microsoft Bat Bing Tracker places the bat.bing cookie on a user's browser, which collects information about the user").

1076, 1078. Similarly, in *Mirmalek*, which involved the use of three third-party trackers similar to the Web Trackers used by Adidas, Judge Breyer held that "the third-party Trackers operate as pen registers under [CIPA] Section 638.50 because the Trackers are a process and/or device that collect users' internet protocol ("IP") addresses." 2024 WL 5102709, at *3.

More recently, *Conohan* sustained CIPA claims arising from the defendant's use of the TikTok web tracker (the same used by Adidas here), which "serves as a de-anonymization process that identifies visitors for marketing and surveillance purposes for the benefit of both" TikTok and the defendant website owner. 2025 WL 1111246 at *1, *5; *see also Shah*, 754 F. Supp. 3d at 929 (sustaining claims that the collection of users' IP addresses violated CIPA Section 638.51, because "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information.") (citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014)).

Adidas's primary response to the well-pleaded allegation that the Web Trackers are "pen registers" under CIPA is to cite criminal cases involving the use of pen registers that arose under other statutes and to argue that Adidas did not operate the kinds of pen registers at issue in such cases. But these cases are inapplicable here, and under CIPA, a pen register can take multiple forms.

As Judge Klausner noted in *Moody*, whether or not an unrelated federal statute applies to the interception of internet communications has no bearing on the scope of CIPA, which *Moody* and other courts have repeatedly held is not limited to telephonic communications. *Moody*, 742 F. Supp. 3d at 1076 ("Defendant cites a different district court case […] in which a court found that a similar federal statute was limited to physical devices attached to a telephone line. However, this case concerned federal law, not California law" and is therefore "not binding."). Even if the Court were to look beyond CIPA itself, other courts have recognized that devices that intercept internet communications are analogous to a pen register. *See, e.g.*,

*United States v. Forrester*, 512 F.3d 500, 504 (9th Cir. 2008) (concluding that "computer surveillance that enabled the government to learn the to/from addresses of [the defendant's] e-mail messages, the Internet protocol ('IP') addresses of the websites that he visited and the total volume of information transmitted to or from his account" was "analogous to the use of a pen register").

Next, citing only *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3-4 (N.D. Cal. June 24, 2025), Adidas argues that its collection of information through "fingerprinting" or "Advanced AutoMatching" surpasses the reach of § 638.51 because, Defendant argues, this collection captures the communication's content. Def. Br. 17-18. But *Kishnani* badly misreads the plain language of the statute, as its holding would make the pen register provision a nullity. As the *Kishnani* court recognized, CIPA defines trap and trace devices and pen registers as devices that do not capture the substance of a communication; thus, if the plaintiff alleged the collection of substantive communications, the device at issue would not constitute a pen register under CIPA. *Id.* at *4. The *Kishnani* court appears to recognize this (*Id.* at *5), but fails to acknowledge that its interpretation, which is contrary to other cases, effectively moots Section 638.51 of CIPA: according to *Kishnani*, a device that fails to collect "personal information" that "implicates a protectible privacy interest" is not a pen register, but a device that captures substantive communications, which the *Kishnani* court believes is necessary to "implicate a protectible privacy interest," is also not a pen register. *Compare Zarif*, *Moody*, *Mirmalek*, *Shah*, and *Conohan*.[10] The Court should not

[10] In *Shah v. Fandom, Inc.*, for example, the court held that "Plaintiffs sufficiently allege statutory standing. Plaintiffs plausibly allege that the collection of their IP addresses through the Trackers allows the third parties to obtain 'personally identifying, non-anonymized information,' and that the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising." 754 F. Supp. 3d 924, 932 (N.D. Cal. Oct. 21, 2024). Plaintiffs here allege that the information collected by Defendant included "unique

disregard Ninth Circuit law or endorse a reading of Section 638.51 that would render the statute a nullity.

Adidas's argument that Plaintiffs' allegations are both "under- and over-inclusive" evinces a misreading of CIPA and would bar claims that capture the content of communications. Def. Br. at 19. This narrowing of CIPA has been rejected by numerous courts in this Circuit which have held that the third party trackers much like the Web Trackers alleged here are pen registers under CIPA. *Moody*, 742 F. Supp. 3d at 1078; *Mirmalek*, 2024 WL 5102709, at *3.

Adidas next makes the bizarre argument that it may lawfully use a pen register to spy on visitors to the Adidas Website because Defendant itself is the "user" of the technology. Def. Br. at 20. It bases its argument on a strained reading of CIPA and a citation to an out-of-Circuit case applying a different statute: the Electronic Communications Privacy Act ("ECPA"). The Southern District of New York's holding that a website operator can consent to the use of web trackers on its own website under the ECPA has no bearing on whether consumers in California have consented to the placement of web trackers on their browsers under CIPA. *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001). The fair application of CIPA to protect Californians from the type of spying in which Adidas is engaged is necessary to ensure that Californians can use the Internet with their privacy rights intact, free from the corporate surveillance in which Adidas engages for its own profit.

Finally, Adidas's position that the Web Trackers are not pen registers under existing law is belied by the fact that, as Defendant's brief highlights, California's legislature is considering a statute that would amend existing law to exempt software like the Web Trackers. Crimes: invasion of privacy, Cal. S., S.B. 690 (2025).

---

identifiers," including the Microsoft ID collected by the Microsoft Bat Bing Tracker, a web tracker not at issue in *Kishnani*. ¶¶43-44.

Adidas cites this bill to perhaps suggest that some wish to protect corporations like Adidas that spy on their customers from lawsuits such as this one. Def. Br. at 2. Of course, the mere introduction of such a bill makes clear that CIPA currently applies to the Web Trackers; otherwise, there would be no purpose for the proposed legislation. In any case, the most recent version of the bill eliminated retroactivity provisions, so even if that bill passes, the subsequent change in law will not impact this litigation. Crimes: invasion of privacy, Cal. S., S.B. 690 (2025).

### C. Plaintiffs Did Not Consent to Web Tracking

Plaintiffs were never notified that Adidas's website used Web Trackers, and Plaintiffs were never provided a meaningful opportunity to consent to having their data collected. The Adidas Website contained a hidden link that leads to a page describing how cookies and other tracking technologies are used on the Adidas Website to collect and store data, but it does not use a pop-up window informing users that their data is being collected, and the Terms of Use are not readily visible or highlighted. ¶¶50-51. This means that users are not required to review the Terms of Use before accessing the Adidas Website. ¶52. Indeed, the Terms of Use are only accessible via hyperlink in small font at the bottom of the website alongside other hyperlinks. ¶51. This is woefully insufficient to establish consent as a matter of law at the pleading stage, under clear Ninth Circuit law. *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1357 (C.D. Cal. 2023) (Curiel, J.) (consent defense was premature at motion to dismiss stage).

Moreover, even if these hidden disclosures by Adidas had put users on notice of the Web Trackers, CIPA requires express consent. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (website disclosure in CIPA case was not enforceable because the website did not require users to affirmatively assent to sharing information with third parties); *see India Price*, 712 F. Supp. 3d at 1359 (website cookies policy located at the bottom of the page did not put users on notice of data collection).

Plaintiffs who are unaware that their information is being tracked have statutory standing to bring privacy claims. *Shah*, 754 F. Supp. 3d at 931-32, at *5. Adidas contends that its hidden hyperlink is enforceable if it "put a website user on actual or inquiry notice of the site's terms." Def. Br. at 21. But its citation to *Nguyen* does not help its argument, and confirms why Adidas cannot obtain dismissal based on any supposed "consent" here. 763 F.3d at 1177. In that case, the Ninth Circuit held that because Barnes & Noble buried its Terms of Use in a hyperlink at the bottom of its website "Nguyen had insufficient notice of Barnes & Noble's Terms of Use, and thus did not enter into an agreement with Barnes & Noble to arbitrate his claims." *Id.* at 1180.

For similar reasons, *Moretti v. Hertz Corp.* does not help Adidas either. 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014). That case addressed whether a forum selection clause in the Hertz website's Terms of Use was valid. The court held that it was valid because the website required users to affirmatively check an "Acceptance Box" before making a booking. *Id.* The circumstances here are the opposite; Adidas required no formal acceptance of its terms as a condition of a user visiting its website, and users could browse the website while unwittingly having their data collected without their consent. ¶52. Indeed, because the link to Adidas's terms of service are at the very bottom of a very long home page, and because the Web Trackers began to spy on users as soon as the open that home page, users of the Adidas Website had their information collected before they could even click on the link to view the terms of service. ¶51.

Additionally, the minor Plaintiff in this case, along with other minor users of the Adidas Website, cannot consent to the use of Web Trackers as a matter of law. ¶53; *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *2 (N.D. Cal. Mar. 17, 2025) (acknowledging that parent or guardian consent would be necessary to collect data from children). Adidas does not contest this in its brief, and in fact does not even address this allegation.

**CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be denied.

DATED: August 22, 2025

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson (admitted *pro hac vice*)
(N.Y. Bar No. 4149407)
(avi@blbglaw.com)
Michael Blatchley (admitted *pro hac vice*)
(N.Y. Bar No. 4747424)
(michaelb@blbglaw.com)
Avi Mediratta
(N.Y. Bar No. 6019186)
(avi.mediratta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

-and-

Jonathan D. Uslaner (Cal. Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Plaintiffs*