PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
EMMA Z. BURGOON (CA SBN 348097)
EBurgoon@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

Attorneys for Defendant
ADIDAS AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MAEVE CAMPLISSON, DAVID SANCHEZ, and S.D., A MINOR, BY AND THROUGH THEIR LEGAL GUARDIAN ELVIS DICIERO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ADIDAS AMERICA, INC.,

Defendant.

Case No. 25-cv-00603-GPC-KSC

**DEFENDANT ADIDAS AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Judge: Hon. Gonzalo P. Curiel

Date: October 10, 2025
Time: 1:30 PM
Ctrm: 12A

Complaint Filed: March 19, 2025

# TABLE OF CONTENTS

**Page**

I. ARGUMENT ..... 1

A. Plaintiffs Misconstrue the Complaint and Caselaw to Establish Standing ..... 1

1. Plaintiffs recast their allegations to claim injury when there is none ..... 1

2. Plaintiffs allege no privacy harm, as required by *TransUnion* and in contrast to the cases on which they rely ..... 2

B. There Is No Support for Plaintiffs' Argument That All Cookies Are "Pen Registers" ..... 6

C. Plaintiffs Seek to Impose Non-Existent Disclosure Requirements ..... 9

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42 (N.D. Cal. 2020) .... 5

*Aviles v. LiveRamp, Inc.*, 2025 WL 4871986 (Cal. Super. Ct. Jan. 28, 2025) .... 7

*Bona Fide Conglomerate Inc. v. SourceAmerica*, 2016 WL 3543699 (S.D. Cal. June 29, 2016) .... 4

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .... 2, 5

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .... 4

*Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .... 5

*Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 4871986 (Cal. Super. Ct. Jan. 28, 2025) .... 10

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) .... 8

*Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .... 3, 6

*Doe v. Call-On DOC, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025) .... 4

*In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .... 8

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .... 3

*Garcia v. Build.com, Inc.*, 2023 WL 4535531 (S.D. Cal. July 13, 2023) .... 4

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013).......................................................4

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..............................................................7

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023)..................................................................5

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025).......................................................5, 6

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 15, 2024) .......................................................6

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ..............................................................10

*Jones v. Tonal Sys. Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ................................................................7

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ..................................................6, 8

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ...............................................3, 8, 9

*Moody v. C2 Educational Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024)............................................................3, 6

*Osgood v. Main Street Marketing, LLC*,
2017 WL 131829 (S.D. Cal. Jan. 13, 2017) ..........................................................4

*Popa v. Microsoft Corp.*
2025 WL 2448824 (9th Cir. Aug. 26, 2025)...........................................................3

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).........................................................5

*Rodriguez v. Google, LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025)............................................................2, 5

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)..........................................................3, 8, 9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................ 2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................ 3

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) ........................................ 3

*Wakefield v. ViSalus Inc.*,
51 F. 4th 1109 (9th Cir. 2022) ............................................................ 3

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .............................................. 10

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ....................................... 3, 7

**Statutes & Other Authorities**

18 U.S.C. § 2510 ................................................................................ 8

Cal. Pen. Code § 630 *et seq.* ................................................................ *passim*

Cal. Pen. Code § 638.50 *et seq.* ............................................................ *passim*

Cal. Bus. & Prof. Code § 22575 *et seq.* .................................................. 1

Crimes: Invasion of Privacy, S.B. 690,
2025-2026 Reg. Sess. (Cal. 2025) ........................................................ 9

Crimes: Invasion of Privacy, S.B. 690,
Hearing on S.B. 690 Before the S. Standing Comm. on Pub. Safety,
2025-2026 Reg. Sess. (Cal. Apr. 29, 2025) ........................................... 9

Nothing in Plaintiffs' opposition[1] overcomes the three threshold defects in the Complaint:[2] lack of standing, failure to plead a claim, and consent to the at-issue conduct. ***First,*** Plaintiffs argue that any alleged CIPA violation, alone, is sufficient to confer standing. But they ignore that in the cases they rely on, courts also found an accompanying invasion of privacy. There is none here. ***Second,*** Plaintiffs make the novel claim that CIPA's "pen register" provision applies to ubiquitous internet technologies, regardless of whether they actually operate like the pen registers CIPA was intended to regulate. Their argument runs counter to the legislative history as well as cases correctly finding that technologies identical to the Cookies are not "pen registers" under § 638.51. ***Third,*** Plaintiffs impose a heightened requirement that adidas use a pop-window or otherwise "highlight" the Terms and Conditions containing the Privacy Policy. But that is not required by CalOPPA,[3] a fact they fail to address. For these reasons and those set forth in adidas's motion, the Court should dismiss Plaintiffs' Complaint.

# I. ARGUMENT

## A. Plaintiffs Misconstrue the Complaint and Caselaw to Establish Standing

### 1. Plaintiffs recast their allegations to claim injury when there is none

To argue that they have standing, Plaintiffs describe allegations that (i) "they visited the [a]didas [w]ebsite" (Opp. at 6 (citing Compl. ¶¶ 10-12)), (ii) "[a]didas surreptitiously captured their user information" (*id.* (citing Compl. ¶¶ 24-27, 30-32, 34-35)), and (iii) the "secret collection of their personally identifiable information caused them harm" (*id.* (citing Compl. ¶¶ 2-3, 54-57)). But this recitation

---

[1] (ECF No. 22, Plaintiffs' Opposition to Defendant Adidas America Inc's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Opp."))

[2] (ECF No. 3, Corrected Class Action Complaint ("Compl.").)

[3] (ECF No. 19, Defendant Adidas America, Inc.'s Notice of Motion and Motion to Dismiss Plaintiffs' Complaint ("Mot.") at 21 (citing California Online Privacy Protection Act, Cal. Bus. & Prof. Code § 22575 *et seq.*)

mischaracterizes the Complaint.

As adidas has shown, Plaintiffs fail to adequately allege anything other than they visited the adidas website and that adidas collected their IP addresses. (Mot. at 5-6, 10-11.) They do not allege that adidas captured ***their*** information or harmed ***them***. (Opp. at 6.) Instead, the allegations Plaintiffs cite pertain only to data that the Cookies ***could*** purportedly collect from ***unspecified*** "***users***," not data ***actually*** collected from ***Plaintiffs***. (Mot. at 15-16.) To remedy this, Plaintiffs argue that their repeated reference to "users" was meant to be interchangeable with "Plaintiffs." (Opp. at 15.) This argument, however, does not hold water given the dispositive gaps in their pleading, to which Plaintiffs have no response. (*See* Mot. at 15-16 (no allegation that Plaintiffs were served targeted ads as a result of data collection, have TikTok accounts and would be affected by "fingerprinting," entered name, date of birth, or address that would be collected by "AutoAdvanced Matching," or were Microsoft users who would have an MUID to collect).)

These pleading deficiencies preclude a finding of standing because they render Plaintiffs' allegations about harm "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). adidas cannot collect information Plaintiffs do not have or did not provide (*e.g.*, MUID, name, date of birth, address) or connect it with other non-existent information (*e.g.*, TikTok account data for Plaintiffs without accounts). Nor can Plaintiffs plausibly allege that adidas collected their data without alleging that they received targeted advertising using that data.[4]

### 2. Plaintiffs allege no privacy harm, as required by *TransUnion* and in contrast to the cases on which they rely

Plaintiffs argue that adidas attempts to "raise the bar to assert standing under

[4] Plaintiffs argue that *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) finds standing under CIPA where plaintiffs have "a stake in the value of their misappropriated data." But in that quoted language, the court is evaluating whether plaintiffs had suffered a damage or loss for purposes of their Computer Data Access and Fraud Act claim. *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) cites the same discussion in *Brown.*

data privacy statutes" by invoking *TransUnion*. (Opp. at 10.) adidas does not "raise the bar," only confirms that one exists. *TransUnion* requires Plaintiffs to plead that they have suffered an injury with a common-law analogue. 594 U.S. 413, 424 (2021). Plaintiffs are not wrong that those injuries can be intangible, such as an invasion of privacy. (Opp. at 10-11.) They, however, have failed to plead the required invasion of privacy, which would necessarily involve sensitive or misused data.[5] *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, at *2 (N.D. Cal. Oct. 10, 2023) (no standing for CIPA § 631 claim because plaintiff did not allege interception of "any sensitive or confidential information" and thus did not show that a "*privacy* violation" occurred) (collecting cases); *see also Popa v. Microsoft Corp.*, 2025 WL 2448824, at *5-6 (9th Cir. Aug. 26, 2025) (no standing per se for violations of privacy statutes and affirming dismissal of Pennsylvania wiretap claim for lack of standing because plaintiff did not allege interception of "embarrassing, invasive, or otherwise private information").

***CIPA standing requires pleading an invasion of privacy.*** Plaintiffs ask this Court to find that their alleged CIPA "procedural violation"—divorced from any legitimate privacy interest—is sufficient to confer standing. (Opp. at 6-8.) But the primary cases they cite found standing in §§ 631 and 632 cases where the alleged violation was synonymous with a common law invasion of privacy claim and implicated sensitive information.[6] *See In re Facebook, Inc. Internet Tracking*

---

[5] *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022), which Plaintiffs cite, is not to the contrary. (*See* Opp. at 10-11.) There, the Ninth Circuit reaffirmed that an injury-in-fact must have "a close historical or common-law analog." *Wakefield*, 51 F. 4th at 1118 (repeated telemarketing calls constituted a nuisance in violation of the right to privacy consistent with "the Restatement of Torts' discussion of privacy torts and the widespread recognition among states of the right to privacy").

[6] *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) and *Moody v. C2 Educational Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024), which Plaintiffs also cite (Opp. 6-7) do not analyze *TransUnion*'s requirement that the alleged harm have a close relationship to a common law invasion of privacy claim. And *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024), *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025), and *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) do not address Article III standing at all. (Opp. at 7.)

*Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020) ("historically recognized right to privacy" implicated where sensitive data collected after users logged off); *In re Google Inc.*, 2013 WL 5423918, at *17 (N.D. Cal. Sept. 26, 2013) (CIPA intended to protect against invasions of privacy that "involve[] an affront to human dignity" such as the interception of email messages); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) (finding standing based on allegations that defendant intercepted sensitive chatbox communications).

The cases Plaintiffs cite from this Court confirm standing for CIPA violations only where a substantive privacy right is infringed, such as collection of health information involving "sexually transmitted infections, pregnancy status, [and] medications." *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *3-4 (S.D. Cal. June 13, 2025); *see also Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *7-8 (S.D. Cal. June 29, 2016) (violation of CIPA "sufficient in ***some circumstances*** to constitute injury in fact" where plaintiff alleges "a violation of privacy rights") (emphasis added); *Osgood v. Main Street Marketing, LLC*, 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017) (secret recording of plaintiffs' phone calls "allege[d] an invasion of privacy injury"). The same is not true here. Plaintiffs' allegations amount only to a claim that adidas collected their IP addresses, which cannot plausibly implicate any privacy concerns. (Mot. at 10-11 (collecting cases finding no expectation of privacy in IP addresses).) Even if they adequately pled collection of additional data like device or browser information (and they did not), that would also not be sufficient. (Mot. at 11-12.)

***Plaintiffs have no privacy interest in the purportedly collected data.*** In the alternative, Plaintiffs argue that they have an "expectation of privacy" in the data collected—but their cases and the Complaint are factually distinguishable. ***First,*** two of Plaintiffs' cases involved extensive data collection even when users logged out or chose not to use a platform. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 613 (N.D. Cal. 2021) (alleging widespread data collection practices including

contents of communications "regardless of whether a user is logged-in"); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 966 (C.D. Cal. 2023) (alleging data collection "even from non-users of [defendant's platform] through the installation […] on third-party websites"). Plaintiffs' third case expressly acknowledges that only the scanning of his "computer for files that revealed his identity and browsing habits" was sensitive. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). ***Second,*** Plaintiffs argue that they allege that their information was shared or misused "in detail." (Opp. at 14 (citing Compl. ¶¶ 24, 29-36, 43-46.) But the cited allegations only allege that unspecified users' data (not ***Plaintiffs'*** data) is shared with TikTok and Microsoft for purposes of targeted advertising. (Mot. at 14-15, Section I(A)(1).) Nor do Plaintiffs cite anything to support their claim that "targeted advertising" is a "misuse."[7]

***Plaintiffs cannot distinguish on-point caselaw.*** Finally, Plaintiffs try, but fail, to distinguish cases involving near identical (and dismissed) § 638.51 claims. Plaintiffs argue their allegations diverge from those in both *Heiting* and *Hughes* because those allegations were "nonspecific and conclusory." (Opp. at 13.) Not so.

| Case | Allegation | Plaintiffs' Allegation |
|---|---|---|
| *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *1 (C.D. Cal. | TikTok Pixel "gathers visitors' device and browser information, geographic location, and other details" and "matches it with TikTok's | TikTok Pixel collects "IP address (which can be used to determine [] geographic location," "unique identifiers," "device details," and "browser |

[7] Plaintiffs also claim harm by asserting that adidas "has not compensated Plaintiffs for the collection and use of [their] data." (Opp. at 9.) As an initial matter, the Complaint only alleges that Plaintiffs' personal information was "something of value" (Compl. ¶¶ 2-3) and that adidas collected users' information without their knowledge or consent (*id.* ¶¶ 54-57). That is not equivalent to an allegation that adidas has not compensated them, and Plaintiffs cannot amend their Complaint through their opposition. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("[I]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (citation omitted)). But even that allegation would be insufficient. Plaintiffs must specifically allege "the potential monetary value" of the collected data to establish injury. *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025). Further, as noted in footnote 4, *Brown* and *Rodriguez* do not help because those cases did not evaluate loss for purposes of CIPA standing.

| Case | Allegation | Plaintiffs' Allegation |
|---|---|---|
| Feb. 3, 2025). | existing data to identify the visitor." | information" to "report to TikTok." (Compl. ¶ 30.) |
| *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *1 (C.D. Cal. July 12, 2024) | TikTok Pixel uses "fingerprinting" to "collect[] as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." | TikTok Pixel "collects as much information as possible about the [a]didas [w]ebsite user and matches that information to the existing data from TikTok's database […] which includes millions of users." (Compl. ¶ 31.) |

### B. There Is No Support for Plaintiffs' Argument That All Cookies Are "Pen Registers"

Plaintiffs ignore the plain text and legislative history of § 638.51 (as do several cases they rely on) to save their claim. They advance five main arguments: (i) § 638.51 applies to technologies beyond telephones (Opp. at 16); (ii) the Cookies are "pen registers" (pursuant to cases misapplying the statute) (*id.* at 17-19); (iii) the Court should disregard the on-point case, *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal filed*, No. 25-4452 (9th Cir. July 18, 2025) (*id.* at 20-21); (iv) adidas does not qualify for an exemption as a "user" of an "electronic communication service," (*id.* at 21); and (v) proposed legislation clarifying the scope of CIPA does not alter its applicability to this case (*id.* at 21-22). These arguments are irrelevant or incorrect.

***First***, Plaintiffs argue at length that software is not excluded from being a "pen register." (Opp. at 16.) This is not an argument adidas makes.[8] Rather, adidas argues that CIPA's legislative history shows that the Cookies are not "pen registers" because they do not function like traditional pen registers that recorded all outgoing numbers dialed on a landline telephone. (Mot. at 13-14.) Plaintiffs

[8] Plaintiffs cite *Moody*, 742 F. Supp. 3d at 1072 and *Conohan*, 2025 WL 1111246, at *6 here. (Opp. at 18-19.) But those cases only addressed arguments that § 638.51 is limited to telephones and other arguments adidas does not raise.

wrongly suggest that courts sustain § 638.51 claims involving website technologies as a matter of course. (*See* Opp. at 17.) In doing so, Plaintiffs ignore several cases, including *Aviles v. LiveRamp, Inc.*, which found that identical technologies are not "pen registers." 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025). There, plaintiff alleged that defendant collected visitors' IP addresses in violation of § 638.51. *Id.* at *1. Recognizing that, historically, a pen register records the numbers dialed ***from a telephone***, the court explained that the analog for the internet is the "IP address and related information of ***a website accessed by a computer*** – but ***not the computer's own IP address*** or identifying information." *Id.* at *2 (emphasis added). Here, Plaintiffs allege that the adidas website captured their IP addresses. (Compl. ¶¶ 55, 57, 62, 69, 70.) But that is the equivalent of capturing Plaintiffs' own phone numbers. To allege that the Cookies are "pen registers," Plaintiffs would have needed to allege that the Cookies captured the IP addresses of adidas's website and all other websites Plaintiffs visited. Plaintiffs have not and cannot.

***Second***, Plaintiffs assert that the Cookies are "pen registers" because they are "'devices or processes' that record routing, addressing and signaling information transmitted by the users' devices when they visit the Adidas Website." (Opp. at 17.) That allegation merely recites the statutory language and is insufficient. *See Jones v. Tonal Sys. Inc.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024) (dismissing CIPA § 631 claim based on conclusory statements parroting the statute that fell "below the *Twombly* and *Iqbal* plausibility threshold"). Moreover, to state a claim, Plaintiffs must allege that the Cookies collect all outgoing dialing information like historical "pen registers." (Mot. at 16-17.)[9] Even if the Court considers the types

[9] Plaintiffs' cases are largely in accord. (Opp. at 17-19.) In those cases, plaintiffs alleged wide-ranging collection of ***all*** outgoing information, not the discrete and commonplace collection of IP addresses alleged here. (Compl. ¶¶ 3, 24, 44, 69, 70; *see Greenley v Kochava, Inc.*, 684 F. Supp. 3d 1024, 1035 (S.D. Cal. 2023) (alleged collection of usernames, emails, customer IDs, search terms, and activities on the mobile app); *Zarif*, 2025 WL 486317, at *1 (alleged collection of all "real-time communications" while visiting defendant's website).)

of information that the Cookies allegedly collect from users generally (*see* Compl. ¶¶ 3, 23, 30, 34), the Cookies still are not "pen registers" collecting all outgoing dialing information. Moreover, browsing information and fingerprinting and AutoAdvanced Matching data do not fall under the scope of § 638.51 because they are not "routing, addressing, and signaling information." (Mot. at 17-18.)

***Third***, Plaintiffs urge the Court to disregard *Kishnani* because the court "badly misreads" the statute by defining "pen registers as devices that do not capture the substance of a communication." (Opp. at 20.) *Kishani* did not misread the statute at all:

> "Pen register" means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents of a communication***.

§ 638.50(b) (emphasis added). Based on this plain language, the court concluded that the TikTok Pixel's alleged fingerprinting and AutoAdvanced Matching captured the content of a communication, rather than identifying information about a communication, and dismissed with prejudice. *Kishnani*, 2025 WL 1745726, at *4. Plaintiffs' allegations are indistinguishable, and the same result should follow.

***Fourth***, Plaintiffs claim that *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001) "has no bearing" on whether adidas's consent exempts it under CIPA. (Opp. at 21.) But that case helpfully discussed how to interpret the terms "user" and "electronic communication service" under ECPA, which also appear in § 638.51's exemption provision. § 638.51(b)(5); 18 U.S.C. § 2510; *see Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (evaluating identical language in CIPA § 631 under the framework used to evaluate

---

Plaintiffs also cite *Mirmalek*, 2024 WL 5102709 and *Shah*, 754 F. Supp. 3d 924 to argue that devices that collect only IP addresses are "pen registers." (Opp. at 19.) These cases are outliers, and neither considers that, consistent with the statute's intent, a "pen register" must collect all outgoing information, rather than specific information when visiting a specific website. (*See* Mot. at 16-18.)

the same language in ECPA).[10] In that case, the internet was the "electronic communication service" where the "user" (website operator) could consent to using tracking cookies on their websites. Here, adidas is the "user" who consented to the Cookies' use, exempting it from liability. § 638.51(b)(5) ("A provider of electronic or wire communication service may use a pen register […] [i]f the consent of the user of that service has been obtained.")

***Finally***, Plaintiffs argue that S.B. 690 would not serve a purpose unless CIPA currently applies to the Cookies because the amendment seeks to "exempt software like the Web Trackers." (Opp. at 21-22.) But the bill seeks to exempt use for a "commercial business purpose." Crimes: Invasion of Privacy, S.B. 690, 2025-2026 Reg. Sess. (Cal. 2025). The legislature has also made clear that the bill clarifies existing law so that CIPA cannot be improperly weaponized against lawful business activities (as here). *See* Crimes: Invasion of Privacy, S.B. 690, Hearing on S.B. 690 Before the S. Standing Comm. on Pub. Safety, 2025-2026 Reg. Sess. (Cal. Apr. 29, 2025) (statement of Sen. Anna Caballero) ("[S.B. 690] will amend CIPA, the 50-year-old criminal statute, to ***clarify*** the business activities already regulated by the CCPA are not within the scope of CIPA.") (emphasis added).[11]

### C. Plaintiffs Seek to Impose Non-Existent Disclosure Requirements

Plaintiffs repeat that they were not on notice of the alleged data collection because adidas does not use a pop-up window or otherwise highlight its Terms and Conditions containing the Privacy Policy. (Opp. at 22.) Plaintiffs point to no authority requiring a pop-up window or highlighted terms, and do not address

[10] While Plaintiffs criticize adidas's citation to an ECPA case, both *Mirmalek*, 2024 WL 5102709, and *Shah*, 754 F. Supp. 3d 924—two cases Plaintiffs repeatedly cite to—rely on *In re Zynga Privacy Litigation*, 750 F. 3d 1098 (9th Cir. 2014), an ECPA case, to interpret the meaning of "addressing information" under § 638.51.

[11] Plaintiffs seek judicial notice of the complaint in *Licea v. Hickory Farms, LLC*, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) to compare the allegations there to their own. (Opp. at 14 n.6.) The need to do so is unclear; adidas only cited *Licea* for the proposition that collection of IP addresses is a required part of using the internet. (Mot. at 14.)

adidas's argument that it fully complies with CalOPPA. (Mot. at 21.) Moreover, Plaintiffs do not address their failure to allege that they did not see the Terms and Conditions or Privacy Policy. (Mot. at 22.) They allege generally that "[a] user that does not scroll to the very bottom of the website will not see that link," but say nothing about whether they viewed the terms. (Compl. ¶ 51).

The cases Plaintiffs cite are also distinguishable. In *India Price v. Carnival Corp.*, the court found that plaintiffs had not consented because they had a privacy interest in the collected data. 712 F. Supp. 3d 1347, 1356-57 (S.D. Cal. 2024) (plaintiffs did not consent where they adequately plead interception of "sensitive, personal information" like "passport numbers and credit cards"). And in *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077 (C.D. Cal. 2021), the court only analyzed whether a distinct provision in a privacy policy put plaintiff on notice that a third party was receiving her information for purposes of a § 631 claim. The court did not address whether plaintiff consented to use of website technologies like the Cookies. Lastly, Plaintiffs argue that minor users cannot provide consent, citing *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025). There, plaintiffs alleged that their children's data was collected without parental consent. *Id.* at *3. Here, adidas's Terms and Conditions state that minors may "use [the website] only after your parent(s), guardian, or legal representative has consented to these Terms." (ECF No. 20, adidas's Request for Judicial Notice, at 7.) Thus, the allegation that S.D. used adidas's website necessarily implies that S.D.'s legal guardian consented on their behalf. (Compl. ¶ 12.)

Dated: September 5, 2025 MORRISON & FOERSTER LLP

By: */s/ Purvi G. Patel*
Purvi G. Patel
***Attorneys for Defendant***
***adidas America, Inc.***