PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
EMMA Z. BURGOON (CA SBN 348097)
EBurgoon@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

Attorneys for Defendant
ADIDAS AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MAEVE CAMPLISSON, DAVID SANCHEZ, and S.D., A MINOR, BY AND THROUGH THEIR LEGAL GUARDIAN ELVIS DICIERO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ADIDAS AMERICA, INC.,

Defendant.

Case No. 25-cv-00603-GPC-KSC

**DEFENDANT ADIDAS AMERICA, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS MOTION TO DISMISS**

Judge: Hon. Gonzalo P. Curiel

Date: November 14, 2025
Time: 1:30 PM
Ctrm: 12A

Complaint Filed: March 19, 2025

Defendant adidas America, Inc. respectfully notifies the Court and Plaintiffs of supplemental authority in support of adidas's pending Motion to Dismiss Plaintiffs' Complaint (ECF No. 19):

- *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025), attached as **Exhibit A**.
- *Wooten v. BioLife Plasma Servs. L.P.*, No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025), attached as **Exhibit B**.
- *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025), attached as **Exhibit C**.

Dated: November 5, 2025 MORRISON & FOERSTER LLP

By: */s/ Purvi G. Patel*
Purvi G. Patel

***Attorneys for Defendant adidas America, Inc.***

# Exhibit A

2025 WL 2822879
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Saber KHAMOOSHI, et al., Plaintiffs,
v.
POLITICO LLC, Defendant.

Case No. 24-cv-07836-SK
|
Signed October 2, 2025

**Attorneys and Law Firms**

Eric A. Grover, Rachael Ga-Yue Jung, Keller Grover LLP, San Francisco, CA, Scot Bernstein, Law Offices of Scot D. Bernstein a Professional Corporation, Folsom, CA, for Plaintiffs Saber Khamooshi, Ryan Wu, Brian Carolus.

Patrick Nathaniel Keegan, Keegan & Baker, LLP, Carlsbad, CA, Isam Charles Khoury, Timothy Douglas Cohelan, Cohelan Khoury & Singer, San Diego, CA, for Plaintiff John Deddeh.

Seth Adam Safier, Gutride Safier LLP, San Francisco, CA, for Plaintiff Vishal Shah.

Usama Kahf, David M. Shannon, Fisher & Phillips LLP, Irvine, CA, Catherine M. Contino, Fisher & Phillips LLP, Philadelphia, PA, Danielle M. Kays, Fisher & Phillips LLP, Chicago, IL, Xuan Zhou, Fisher & Phillips LLP, San Diego, CA, for Defendant.

## ORDER OF DISMISSAL WITH PREJUDICE FOR LACK OF STANDING

Regarding Docket No. 63

SALLIE KIM, United States Magistrate Judge

***1** This matter comes before the Court upon consideration of the second motion to dismiss filed by Defendant Politico LLC ("Defendant"). (Dkt. No. 63.) The Court determines that the motion is appropriate for disposition without oral argument and, thus, is deemed submitted. *See* Civ. L.R. 7-1(b). All parties have consented to the jurisdiction of the Undersigned magistrate judge. (Dkt. Nos. 20, 21.) Having carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court hereby GRANTS Defendant's motion to dismiss for lack of Article III standing and dismisses WITH PREJUDICE for the reasons set forth below. Because the Court agrees with Defendant that Plaintiffs lack Article III standing, there is no need to reach Defendant's alternative arguments regarding the sufficiency of Plaintiffs' claims. [1]

## BACKGROUND

Plaintiffs Saber Khamooshi, Ryan Wu, Brian Carolus and John Deddeh ("Plaintiffs") bring this putative class action against Defendant, alleging five claims under California law pursuant to: (1) the California Computer Data Access and Fraud Act, Cal. Penal Code § 502; (2) the California Invasion of Privacy Act, Cal. Penal Code § 638.51; (3) the right to privacy, Cal. Const. Art. 1, § 1; (4) unjust enrichment; and (5) the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Dkt. No. 49, ¶¶ 127-204.) Plaintiffs' claims arise from Defendant's alleged embedding of third party trackers on its website, www.Politico.com.

(Dkt. No. 49.) The trackers allegedly collected Plaintiffs' information without their consent for use in advertising and analytics. (*Id.*)

This action was originally filed in the Superior Court of California for the County of San Francisco by Khamooshi, Wu, and Carolus on September 26, 2024. (Dkt. No. 1-1, p. 4.) Defendant removed the case to federal court on November 8, 2024, and the parties agreed to consolidate the claims with a later-filed case brought by Deddeh. (Dkt. Nos. 1, 29.)

On March 31, 2025, Defendant filed a motion to dismiss Plaintiffs' First Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), and 9(b). (Dkt. No. 35.) After full briefing and oral argument, the Court granted Defendant's motion to dismiss for lack of Article III standing on May 13, 2025. (Dkt. No. 48.) The Court offered Plaintiffs an opportunity to amend their complaint. (*Id.*) Plaintiffs filed a Second Amended Complaint. (Dkt. No. 49.) Now before the Court is Defendant's second motion to dismiss the Second Amended Complaint for lack of Article III standing and failure to state a claim. (Dkt. No. 63.) Plaintiffs filed an opposition, and Defendant filed a reply. (Dkt. Nos. 65, 67.)

## ANALYSIS

### A. Legal Standard.

***2** The Court evaluates challenges to Article III standing under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Where, as here, a defendant brings a facial challenge to standing, the court assesses whether the plaintiff has alleged sufficient facts that, taken as true, demonstrate each element of Article III standing. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), cleaned up). A plaintiff must allege facts demonstrating "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Here, the dispute centers on whether Plaintiffs have alleged an injury that is "concrete." A concrete injury is "real, and not abstract." *Id.* at 424 (quoting *Spokeo*, 578 U.S. at 340). Concrete harms include "traditional tangible harms, such as physical harms and monetary harms." *Id.* at 425. Intangible injuries may be concrete if they have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

### B. Defendant's Motion.

The Court previously dismissed this action for lack of Article III standing because Plaintiffs did not allege a "concrete" injury under the analysis mandated by *TransUnion.* (Dkt. No. 48.) The Court rejected Plaintiffs' arguments that they suffered three types of concrete injury: (1) invasion of privacy, (2) unjust enrichment, and (3) heightened risk of future harm. (*Id.*) First, the Court explained that the information allegedly disclosed—IP addresses, browser and device data, and "other identifying information"—either did not implicate a protectable privacy interest (IP addresses) or were fatally vague (browser and device data, other identifying information). (*Id.*) Second, the Court explained that Plaintiffs could not establish standing under an unjust enrichment theory because they had not plausibly alleged that the disclosure of their information was unjust. (*Id.*) Third, the Court explained that Plaintiffs could not base standing on a future risk of harm because they had not alleged any facts indicating that the disclosed information could be used to harm them. (*Id.*)

The Second Amended Complaint alleges that the information disclosed includes IP addresses, browser and device data, and "other identifying information," *as well as* browsing activity, geolocation information, device type, browser type, and "device fingerprints."[2] (Dkt. No. 49, ¶¶ 1, 6, 7, 8, 13, 17, 21, 23, 48, 58, 73, 104, 109, 115, 149, 151(b), 155, 156, 169, 178, 179, 194, 200.) Plaintiffs assert Article III standing based on (1) invasion of privacy and (2) economic harm. (*Id.* at ¶¶ 39-47.)

**1. Invasion of Privacy.**

Plaintiffs' opposition brief largely recycles arguments rejected in the Court's prior Order and does not explain how the Second Amended Complaint addresses the deficiencies of the First Amended Complaint. (Dkt. No. 65.) The Court's prior Order explained why allegations regarding the disclosure of IP addresses, browser and device data, and "other identifying information" were insufficient to support a concrete privacy injury. (Dkt. No. 48.) The Second Amended Complaint adds some new categories of information that Defendant allegedly disclosed: browsing activity, geolocation data, device type, browser type, and "device fingerprints." (*Compare* Dkt. No. 33 *with* Dkt. No. 49.) These new allegations are also insufficient to establish a concrete privacy injury.

***3** As the Court explained in its prior Order, to state a concrete privacy injury, plaintiffs must allege a harm analogous to the common-law privacy torts. (Dkt. No. 48); *See also TransUnion*, 594 U.S. at 424. A harm is analogous to the common-law privacy torts if it involves disclosure of a kind that would be "*highly offensive*" to a reasonable person. *Popa v. Microsoft Corp.*, __F.4th__, 2025 WL 2448824, *5 (9th Cir. Aug. 26, 2025) (quoting *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) and Restatement (Second) of Torts § 652D). Because the injury depends on the nature of the information at issue, plaintiffs must identify the *specific* information allegedly disclosed. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022); *see also Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)

In *Popa*, which was decided on August 26, 2025, after the Court issued the order dismissing the First Amended Complaint on May 13, 2025, the Ninth Circuit considered allegations that the defendant had allegedly disclosed "over 30 different categories of information including: the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls," the user's mailing address with the street number and zip code omitted, and the pet supplies products that interested the user. 2025 WL 2448824, at *2. The court concluded that this information did not give rise to a concrete privacy because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected." *Id.* at *5.

*Popa* controls the analysis in this case. As in *Popa*, Plaintiff identifies "no embarrassing, invasive, or otherwise private information collected." *See id.* at *5. Plaintiffs' allegations regarding device type, browser type, and "device fingerprints" are even less specific that the 30 different categories of information alleged in *Popa*¸ which also included the device type, browser type, and metadata akin to fingerprinting. *See also Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) ("If [d]efendant only collects information regarding the "metadata" of the communication, [p]laintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data e.g., his IP address or general geographic location."). While some types of browsing activity implicate protectable privacy interests, others do not. *Compare Popa*, 2025 WL 2448824, at *5 (no protectable privacy interest in browsing activity on a pet supply website) *with In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (protectable privacy interest in "cradle-to-grave profile" of users' browsing activity across third-party websites combined with their Facebook profiles). The same is true for geolocation information. *Compare In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (no protectable privacy interest in "bits and pieces" of plaintiffs' movements captured only when plaintiffs used defendant's services) *with Carpenter v. United States*, 585 U.S. 296, 310 (2018) (protectible privacy interest in comprehensive record of physical movements as captured by cell-site location information). Absent specific allegations about the type of browsing and geolocation information disclosed, these categories of information are insufficient to support a concrete privacy injury.

***4** In sum, Plaintiffs have failed to allege a concrete privacy injury sufficient to establish Article III standing.

**2. Economic Harm.**

Plaintiffs argue that they have alleged economic harm sufficient for standing because Defendant unjustly profited from the use of their data and because their data carries financial value. (Dkt. No. 65, p. 13.)

As to the unjust enrichment theory, the Court previously explained that the First Amended Complaint failed to allege plausible facts suggesting that Defendant was unjustly enriched. (Dkt. No. 48.) The Second Amended Complaint does not cure this deficiency, as it adds no new allegations that plausibly support this theory. (Dkt. No. 49.) Moreover, Plaintiffs do not meaningfully address this claim in their opposition, devoting less than a full paragraph to it. (Dkt. No. 65.)

As to the financial value theory, Plaintiffs allege only that "user data carries financial value." (Dkt. No. 49, ¶ 44.) "[A]lthough it's true that each user's information is worth a certain amount of money to [Defendant], it does not follow that the same information, when not disclosed, has independent economic value to an individual user." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Plaintiffs point to studies offering to pay users to observe their behavior browsing the web. (Dkt. No. 49, ¶ 44, 49.) However, Plaintiffs do not allege that their web browsing behavior was disclosed, or that Defendant's actions diminished their opportunity to get paid for such studies. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 932 (N.D. Cal. 2015) ("That programs may exist to compensate internet users with $5 gift cards in exchange for monitoring their browsing activity is a fact of little assistance to [p]laintiffs when they have not also alleged an inability to participate in these programs after [Defendant] collected their information.").

Plaintiffs have failed to allege an economic injury sufficient to establish Article III standing. [3]

## CONCLUSION

Plaintiffs have not alleged a concrete injury, and thus have not met their burden of demonstrating Article III standing. The Court therefore GRANTS Defendant's motion to dismiss. The Court has already allowed Plaintiffs one opportunity to amend their complaint, and Plaintiffs have done little to supplement their allegations supporting standing. Accordingly, the Court finds that further amendment would be futile and dismissal for lack of standing shall be WITH PREJUDICE. As this Court lacks subject matter jurisdiction over the claims, all of which are based on state law, IT IS HEREBY ORDERED that this case shall be remanded to the Superior Court of California for the County of San Francisco. The clerk is instructed to transfer the file. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016); *Walker v. Kroger Co.*, No. 22-CV-00261-JST, 2022 WL 20208929, at *2 (N.D. Cal. June 21, 2022).

***5 IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2822879

## Footnotes

1 Defendant requests judicial notice of six documents on file in federal or state court and two California Assembly Bills in conjunction with its arguments that Plaintiffs fail to state a claim. (Dkt. No. 64, 67.) Although these materials may be judicially noticeable, the Court declines the request for judicial notice because these materials are unnecessary to the determination of the present motion. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Judicial notice of legislative facts ... is unnecessary."); *Lathan v. Ducart*, No. 16-16551, 2017 WL 3976705, at *1 (9th Cir. June 16, 2017) (denying request for judicial notice of "documents filed in the district court or orders entered by the district court, or of statutes, regulations, or published opinions" as unnecessary).

2 According to the Second Amended Complaint, "fingerprinting collects passive metadata from a user's browser and device, such as screen resolution, time zone, operating system, installed fonts, language settings, and user agent string." (Dkt. No. 49, ¶ 58.)

3 The Second Amended Complaint includes new allegations that Defendant's technology slows Plaintiffs' browsers and devices and increases their device costs. (Dkt. No. 49, ¶¶ 79, 157.) However, these allegations do not appear in the standing section of the Second Amended Complaint, and Plaintiffs do not rely on these purported technological burdens to establish standing in their opposition brief. Accordingly, the Court does not consider these allegations as a basis for Article III standing.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit B

2025 WL 2979619
Only the Westlaw citation is currently available.
United States District Court, E.D. California.

EDWARD WOOTEN and SARKIS OGANYAN, individually and on behalf of all others similarly situated, Plaintiffs,
v.
BIOLIFE PLASMA SERVICES L.P. and TAKEDA PHARMACEUTICALS U.S.A., INC., Defendants.

No. 1:25-cv-00099-KES-SKO
|
Filed 10/22/2025

Doc. 19

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

***1** Plaintiffs Evan Wooten and Sarkis Oganyan proceed on their first amended class action complaint ("FAC"), on behalf of themselves and others, against defendants BioLife Plasma Services L.P. ("BioLife") and Takeda Pharmaceuticals U.S.A., Inc. ("Takeda"). Doc. 17 ("FAC"). Plaintiffs allege that, when they created accounts on BioLife's website, third-party trackers installed by defendants, and operated by third-parties Snap and Salesforce, captured their email addresses and IP addresses without their consent, in violation of the California Invasion of Privacy Act ("CIPA"). Defendants move to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Doc. 19.[1] For the reasons set forth below, defendants' motion is granted, and this action is dismissed without prejudice.

**I. Background**[2]

Plaintiffs' FAC alleges the following. BioLife and Takeda operate more than 200 blood plasma donation centers across the United States, serving thousands of monthly donors. FAC ¶ 32. In exchange for donations, donors receive monetary compensation. *Id.* A prospective donor cannot donate until they make an account by visiting BioLife's website. *Id.* ¶ 33. When signing up for an account through the website, prospective donors are presented with an online form requesting that they provide their first name, last name, email address, and zip code. *Id.* ¶ 41. Once a user enters the information in the online form and clicks "next," but before the user completes the account creation process, third party trackers installed by defendants intercept the user's email address, the user's IP address, and the fact that the user visited the website.[3] *Id.* ¶ 42. The email address is captured in an encrypted format but is readily decodable and traceable to the individual user. *Id.* ¶¶ 47–55. The IP address allows the third parties to determine the device's state, city, zip code, and approximate latitude and longitude. *Id.* ¶ 62.

The intercepted email address and IP address together enable the third parties to link users' identities across multiple websites and apps, through a process known as "ID bridging." *Id.* ¶ 72. Through ID bridging, the third parties have the ability to "follow [users] all over the internet and feed them advertisements." *Id.* ¶ 77. The collected data can also be used for research and marketing purposes for both defendants and the third parties. *Id.* ¶¶ 82, 86–90; 92–100.

***2** Plaintiff Wooten alleges that he created a BioLife account sometime in February 2023; plaintiff Oganyan alleges that he did so on or about January 28, 2024. *Id.* ¶¶ 6, 8. In creating their accounts, plaintiffs input the requested information on the online form, including their email addresses. *Id.* Wooten states he has continued to access his account through the website as recently as November 2024, and Oganyan states he did so as recently as February 2025. *Id.* Plaintiffs contend that they did not consent to the collection of their email and IP addresses prior to completing the account creation process, and that they were not aware the collection was occurring. *Id.* Plaintiffs allege defendants used the intercepted email and IP addresses for marketing,

advertising, and data analytics purposes. *Id.* ¶ 125. Plaintiffs do not allege that they received targeted advertising, linked to the collection, since creating their accounts.

On January 22, 2025, plaintiff Wooten filed a complaint asserting violations of: (1) CIPA's wire-tapping provision under California Penal Code § 631(a), and (2) CIPA's pen-register provision under California Penal Code § 638.51(a). Doc. 1. Defendants filed an initial motion to dismiss on April 4, 2025. Doc. 13. In response, Wooten filed the operative FAC, adding plaintiff Oganyan and alleging the same causes of action with additional factual allegations. Doc. 17. Defendants then filed a motion to dismiss on June 6, 2025. Doc. 19. Following the Ninth Circuit's decision in *Popa v. Microsoft Corp.*, --- F. 4th ---, 2025 WL 2448824 (9th Cir. Aug. 25, 2025), the Court granted the parties' request to submit supplemental briefing regarding whether plaintiffs have Article III standing to bring their claims. Docs. 24, 25. The Court held oral argument on October 14, 2025. Doc. 33. For the reasons explained below, defendants' motion is granted as plaintiffs fail to establish standing under Article III, and this action is dismissed without prejudice.

**II. Legal Standard**

The Court evaluates challenges to Article III standing under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). A motion to dismiss under Rule 12(b)(1) may be facial or factual. *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In a factual challenge, the court does not simply accept the allegations in the complaint as true. *Leite*, 749 F.3d at 1121. Once the truth of the allegations is challenged, the responding party needs to support the jurisdictional allegations with "competent proof." *Id*. Here, defendants make a facial attack as they argue that the allegations contained in the complaint are insufficient on their face to establish standing. *See* Doc. 27.

**III. Discussion**

To establish standing, plaintiffs must show "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)). A concrete injury "must actually exist;" it must be "real," and not "abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). But "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 341. In other words, plaintiffs' allegations that defendants violated the California Invasion of Privacy Act do not automatically create a concrete injury in the Article III context. Rather, a concrete injury may be intangible if it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* In determining whether alleged privacy intrusions bear such a relationship, courts mainly consider "the nature of the information at issue." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014). "[I]n data breach cases, courts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022).

***3** Plaintiffs have failed to establish that defendants' one-time collection and dissemination of plaintiffs' IP and email addresses, through the third-party trackers, sufficiently impacts plaintiffs' privacy interests to give rise to a concrete injury. Courts have held that there is no legally protected privacy interest in an IP address or, in many contexts, in such relatively quotidian private information as an email address. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023); *Liau v.*


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

*Weee! Inc.*, 23-civ-1177 (PAE), 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024). Concrete intangible harms must also bear a close relationship to traditionally recognized harms. *See Spokeo*, 578 U.S. at 341.

As the Ninth Circuit recently clarified, "there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms ... 'intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light.' " *Popa v. Microsoft Corp.*, --- F.4th ---, 2025 WL 2448824, at *6 (9th Cir. Aug. 26, 2025) (quoting *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023)). At oral argument, plaintiffs argued that defendants committed an intrusion upon seclusion when the third-party trackers allegedly intercepted their IP and email addresses. The Court disagrees. To show intrusion upon seclusion, a plaintiff must show "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be *highly offensive to a reasonable man*." *Id.* at *5 (quoting *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) (emphasis added)). Disclosure of one's email address and IP address, without more, does not bear similarity to the "highly offensive" interferences or disclosures that were actionable at common law. *See id.*; *Khamooshi*, 786 F. Supp. 3d at 1180; *Zynga*, 600 F. Supp. 3d at 1049; *Xu v. Reuters News & Media Inc.*, 24-civ-2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025); *Cooper v. Bonobos, Inc.*, 21-cv-854 (JMF), 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022).

Plaintiffs rely on the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). There, it was alleged that, when a user created a Facebook account, Facebook placed more than ten cookies on the user's browser that tracked the user's browsing history even after the user logged out of Facebook and visited other websites. *Facebook*, 956 F.3d at 596. Facebook used such information in combination with the user's personal Facebook profiles, which could include employment history and political and religious affiliations, to gain a cradle-to-grave profile without the user's consent. *Id.* at 599. The court held that allegations of data collection performed "in order to receive and compile [the user's] personally identifiable browsing history ... no matter how sensitive or personal" constituted a "clear invasion of the historically recognized right to privacy" sufficient to establish Article III standing. *Id.* at 598–99.

In arguing that the one-time collection, and dissemination to Snap and Salesforce, of a user's IP address and email address establishes a concrete injury, plaintiffs misinterpret *Facebook*. *Facebook* held that a dissemination of personal information *may* result in a concrete injury, as the right to privacy "encompass[es] the individual's control of information concerning his or her person," *Facebook*, 956 F.3d at 598 (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)), but the invasive nature of the information collected was crucial to *Facebook*'s holding. The *Facebook* decision "accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." *Popa*, 2025 WL 2448824, at *8. Here, plaintiffs allege a one-time collection of their IP and email addresses, but they do not allege that the third-party trackers collected any other "embarrassing, invasive, or otherwise private information." [4] *Id.* at *5.

***4** Plaintiffs also do not sufficiently allege any *actual* injury. Rather, they allege that the third-party trackers have the *capability* to use these pieces of information to engage in ID bridging, which could then result in targeted advertising and could contribute to defendants' marketing, advertising, and data analytics efforts. *See* FAC ¶¶ 77, 81. But plaintiffs do not allege that defendants themselves took any such actions. Nor do plaintiffs specifically allege that they were subject to any such targeted advertising. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) ("[I]nstead of offering factual allegations about how the plaintiffs' various providers are *actually* using Google's products, the plaintiffs allege hypothetical examples—based on the generic product descriptions—of how various product features could be used in ways that could result in privacy violations."); *Xu*, 2025 WL 488501, at *3 ("[T]he complaint does not allege that [plaintiff] received any targeted advertising or was otherwise affected, much less that [plaintiff] was concretely harmed by any such advertising."). Alleged retention of noninvasive information alone is insufficient to establish Article III standing. *See Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 993 (9th Cir. 2023) ("Where we have held that the retention of illegally obtained records resulted in a concrete injury, we have always identified something beyond retention alone that resulted in an injury of the sort recognized by the Supreme Court, such as ... a violation of the common law right to privacy.").

Plaintiffs fail to establish that the one-time collection of their IP and email addresses is a concrete harm, and they have therefore failed to establish standing under Article III. The FAC must therefore be dismissed without prejudice. *See* *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) ("[D]ismissals for lack of Article III jurisdiction must be entered without prejudice because a court that lacks jurisdiction is 'powerless to reach the merits.' ") (quoting *Fleck & Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*, 471 F.3d 1100, 1106–07 (9th Cir. 2006)).

**IV**. **Conclusion and Order**:
Accordingly:

1. Defendants' motion to dismiss, Doc. 19, is GRANTED;

2. This action is DISMISSED without prejudice; and

3. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 2979619

**Footnotes**

1 Defendants' motion did not initially seek to dismiss plaintiffs' claims under Rule 12(b)(1) for lack of subject matter jurisdiction. *See* Doc. 19. However, following the filing of defendants' motion, the Court granted the parties' request to submit supplemental briefing regarding whether plaintiffs have standing under Article III to bring their claims. Docs. 24, 25.

2 The recitation of facts is based on the allegations contained in the FAC, Doc. 17, the truth of which the Court accepts for purposes of resolving the motion to dismiss. *See* *Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022).

3 The trackers are (i) Evergage, which is owned and operated by Salesforce, and (ii) the Snap Pixel, which is owned and operated by Snap. FAC ¶ 38.

4 The other cases plaintiffs cite are also distinguishable from this case. *See* Doc. 28. While several of them involve the collection of an IP address or an email address, the information collected in those cases always included something more. *See* *Deivaprakash v. Condé Nast Digital*, --- F. Supp. 3d ---, 2025 WL 2541952, at *1 (N.D. Cal. Sept. 4, 2025) (finding allegations "likely satisfy" Article III standing where users alleged cookies monitored users' behavior across internet beyond their use of defendant's website, and compiled comprehensive profiles reflecting users' geographic locations, incomes, and preferences); *Atkins v. Amplitude, Inc.*, No. 24-cv-04913-RFL, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025) (finding standing where app allegedly collected "timestamped geolocation information, device IDs, device fingerprint data ... search terms input to the app, products placed in [consumer's] cart" and may reveal "consumer's religious affiliation, sexual orientation, [or] medical condition"); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (finding standing where cookies allegedly tracked "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, [and] referring URLs"); *Salazar v. National Basketball Association*, 118 F.4th 533, 537–

38 (2d Cir. 2024) (finding standing where Meta Pixel allegedly tracked users' personal viewing information including the (1) title of the NBA.com video a user watched, (2) that video's URL, and (3) the user's Facebook ID, to send user targeted advertising); *Salazar v. Paramount Global*, 133 F.4th 642, 647 (6th Cir. 2025) (finding standing where Pixel allegedly tracked user's private video-viewing history).

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit C

2025 WL 3064113
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

REBEKA RODRIGUEZ, Plaintiff,
v.
CULLIGAN INTERNATIONAL COMPANY, Defendant.

Case No.: 25-cv-00225-AJB-KSC
|
Filed 11/03/2025

**Attorneys and Law Firms**

David W. Reid, Scott J. Ferrell, Victoria C. Knowles, Pacific Trial Attorneys, APC, Newport Beach, CA, for Plaintiff.

Bethany Gayle Lukitsch, Kamran Ahmadian, Baker & Hostetler LLP, Los Angeles, CA, for Defendant.

**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Hon. Anthony J. Battaglia United States District Judge

***1** Before the Court is Defendant Culligan International Company's ("Culligan") motion to dismiss Plaintiff Rebeka Rodriguez's ("Rodriguez") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 16.) The motion is fully briefed. (Doc. Nos. 16; 18; 20.)

For the reasons set forth below, the Court **GRANTS** Culligan's motion to dismiss for lack of subject matter jurisdiction.

## I. BACKGROUND

### A. Factual Background

Rodriguez is "a consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." (Doc. No. 10 ¶ 6.) On an unspecified date in August 2024, Rodriguez visited Culligan's website, www.culligan.com, using "an Internet-connected computer." (Doc. No. 10 ¶ 154.) The website installed 35 "tracking beacons" on Rodriguez's internet browser that collected Rodriguez's "unique [internet protocol ("IP")] address, ... operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature –as well as the connections between them." (*Id.* ¶¶ 44, 156; *see also id.* ¶¶ 67–149 (identifying specific tracking beacons).)

Rodriguez asserts that these tracking beacons are "pen registers" because they "collect information –users' IP addresses –that identifies the outgoing 'routing, addressing, or signaling information' of the user." (*Id.* ¶ 44.) Alternatively, the tracking beacons are "trap and trace devices" because they "collect information –users' IP addresses – that identifies the incoming 'routing, addressing, or signaling information' of the user." (*Id.*) [1] Rodriguez contends that the tracking beacons "do[ ] not collect the content of [her] communications with the Website." (Doc. No. 10 ¶ 184.)

Rodriguez did not consent to Culligan's installation of tracking beacons on her internet browser. (*Id.* ¶¶ 61, 158, 162.)

### B. Procedural Background

On December 18, 2024, Rodriguez initiated this action in the San Diego County Superior Court of California. (Doc. No. 1-2 at 3.) Rodriguez served Culligan with a Summons and Complaint on December 31, 2024. (Doc. No. 4 ¶ 3.) Culligan timely removed the action to this Court. (Doc. No. 1.)

***2** On March 20, 2025, Culligan moved to dismiss Rodriguez's initial complaint. (Doc. No. 8.)

On April 4, 2024, Rodriguez filed the operative FAC. (Doc. No. 10.) The FAC presents a single cause of action alleging that Culligan violated California Penal Code § 638.51 by installing either a pen register or a trap and trace device on her internet browser. (*Id.* ¶¶ 177–88.)

On May 2, 2025, Culligan moved to dismiss the FAC after receiving an extension to submit a responsive filing. (Doc. Nos. 13; 16.) The parties completed briefing on the motion to dismiss on May 27, 2025. (Doc. Nos. 18; 20.) The parties subsequently submitted four notices of supplemental authority. (Doc. Nos. 22–25.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. Lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 807 n.9 (9th Cir. 2015).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In resolving such an attack, unlike a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the pleadings' legal sufficiency and allows a court to dismiss a complaint if the court finds the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). As a matter of law, the court may dismiss the complaint for either a lack of a cognizable legal theory or insufficient facts under a cognizable legal claim. *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding such deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, it is improper for the court to assume "the [plaintiff] can prove facts that [she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*,

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

556 U.S. at 679. The court only reviews the complaint's contents and accepts all factual allegations as true, while drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III. DISCUSSION

***3** Culligan raises five bases for dismissing this action. Culligan argues pursuant to Rule 12(b)(1) that (1) Rodriguez lacks standing. (Doc. No. 16 at 6–12; Doc. No. 20 at 2–6.) Additionally, Culligan asserts pursuant to Rule 12(b)(6) that there is no claim on which relief can be granted because (2) the tracking beacons are not pen registers or trap and trace devices; (3) there is no violation of California Penal Code section 638.51 because Culligan consented to the use of any trap and trace devices; (4) Culligan lacked any necessary criminal intent; and (5) the California Invasion of Privacy Act requires Rodriguez to allege an actual injury, which Rodriguez has failed to do. (Doc. No. 16 at 12–22; Doc. No. 20 at 6–10.)

The Court goes no further than Culligan's first basis because Rodriguez lacks standing to bring the present action.

"To establish standing, a '[p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' " *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The injury must be both "concrete and particularized" and "actual or imminent." *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "A 'concrete' injury 'must actually exist'; put differently, it must be 'real, and not abstract.' " *Id.* (quoting *Spokeo*, 578 U.S. at 340)). Additionally, history is "the touchstone for concreteness." *Id.* at 789. Courts must therefore "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American Courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo*, 578 U.S. at 341).

Rodriguez makes no effort to establish a close relationship between her purported injury and a traditional harm. "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa*, 153 F.4th at 791. At common law, there were "four discrete torts that protected specific kinds of privacy-related harms": "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light." *Id.* at 792 (quoting *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023)). Rodriguez does not analogize her purported injury to any of these harms. (*See generally* Doc. No. 18.)

Instead of pointing to any specific tort, Rodriguez broadly contends that any invasion of a statutorily recognized privacy interest is sufficient to constitute an Article III injury. (*Id.* at 2 (quoting *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660–61 (Cal. Ct. App. 1993)); *see also* Doc. No. 18 at 7–14.) This is not enough. Rodriguez's contention and her accompanying analyses "revert[ ] to a pre-*TransUnion* (even pre-*Spokeo*) approach that favors a legislative body's views in the aggregate over a plaintiff's individual circumstances." *Popa*, 153 F.4th at 792. But current Ninth Circuit precedent "requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Id.* at 793. Rodriguez's failure to demonstrate anything more than an alleged statutory violation is consequently fatal to her claim. *See id.*

Even if Rodriguez had done more, the Court finds that Rodriguez lacks a privacy interest in the data at issue. Again, the collected data consists of Rodriguez's "IP address, [her computer's] operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature – as well as the connections between them." (Doc. No. 10 ¶ 156.)

***4** Rodriguez cursorily asserts that she "has a reasonable expectation of privacy in the IP address of her devices, which is currently statutorily protected in California." (Doc. No. 18 at 7.) Rodriguez adds that "[d]enying [her] right to control the dissemination of [her] IP address ***and the other data linked to her IP address*** captured by third party spyware vendors for marketing purposes is highly offensive and constitutes an invasion of privacy." (*Id.* at 12.)

Courts have consistently held that internet users have no expectation of privacy in their IP addresses. For instance, the Ninth Circuit explained in *United States v. Forrester* that "e-mail and Internet users have no expectation of privacy in ... the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." 512 F.3d 500, 510 (9th Cir. 2008); *see also, e.g., United States v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017), *abrogation on other grounds recognized by United States v. Zodhiates*, 901 F.3d 137, 143–44 (2d Cir. 2018); *United States v. Caira*, 833 F.3d 803, 806 (7th Cir. 2016).

Rodriguez's largely undeveloped attempts to distinguish *Forrester* are unavailing. (*See generally* Doc. No. 18 at 12–14.[2]) Rodriguez primarily claims that "*Forrester* had no occasion to consider whether an Internet user has a reasonable expectation of privacy as to *the user's* IP address on *the user's* devices." (*Id.* at 12.) Although it is true that *Forrester* focused on the IP addresses of the websites a person visited, *Forrester*'s rationale applies equally to the user's IP address. It is still information that "is provided to and used ... for the specific purpose of directing the routing of information." *Forrester*, 512 F.3d at 510; *see also, e.g., Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) ("When internet users visit a website, their devices automatically send their IP addresses to the website's server as part of the communication process.").

Rodriguez's remaining distinctions are equally inapt. For instance, Rodriguez points out that "*Forrester* was decided in 2008, well before the [California Electronic Communications Privacy Act, Cal. Penal Code sections 1546, *et seq.*,] and [California Consumer Privacy Act of 2018, Cal. Civil Code sections 1798.100, *et seq.*,] were enacted into law" and "before the identity resolution industry existed and before tracking software embedded into websites as 'cookies' to track the specific webpages visited by Internet users became technically feasible amongst websites." (Doc. No. 18 at 12.) On the first point, as discussed above, Rodriguez's reliance on potential statutory violations is insufficient to establish an Article III injury. On the second, the fact that a website may be able to track the specific pages an internet user visits does not overcome *Forrester*'s rationale that internet users lack a privacy interest in their IP address because they voluntarily hand over their IP address. Lastly, Rodriguez speculates that the *Forrester* court may have reached a different decision "[i]f the government could 'know the particular pages on the websites the person viewed' by learning the 'IP addresses of websites visited.' " (*Id.* (quoting *Forrester*, 512 F.3d at 510 & n.6).) The Court declines to join in Rodriguez's speculation.

***5** Internet users also have no expectation of privacy in the other data that Culligan allegedly collects. For instance, courts have rejected the idea that an internet user's contact information that is "designed to be exchanged to facilitate communication"—such as their email address or webpage username—constitutes private information. *See, e.g., I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022). Courts have similarly concluded that internet users have no right to privacy in the metadata of their communication. *See, e.g., Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025). The other data that Culligan allegedly collects appears to be designed to be exchanged to facilitate communication and/or to constitute metadata.

Accordingly, Rodriguez lacks an expectation of privacy in the data at issue.

## IV. CONCLUSION

The Court lacks subject matter jurisdiction over this action because Rodriguez has failed to demonstrate that she has suffered an injury cognizable under Article III of the Constitution.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Culligan's motion to dismiss the FAC. (Doc. No. 16.) Specifically, the Court **GRANTS** Culligan's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court **DENIES AS MOOT** Culligan's motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Rodriguez may file a second amended complaint for the limited purpose of curing her lack of standing within 14 days of this Order. Pursuant to Local Civil Rule 15.1.c, any amendment "must be accompanied by a version of th[e FAC] that shows –through redlining, underlining, strikeouts, or other similarly effective typographic methods – how that pleading differs from the [FAC]."

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 3064113

## Footnotes

1 Pursuant to California Penal Code section 638.50(b), a pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Meanwhile, a trap and trace device is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

2 Rodriguez's most-developed argument—pertaining to *Forrester*'s alleged reliance on *Smith v. Maryland*, 442 U.S. 735 (1979)—focuses on whether a tracking beacon can constitute a pen register, not whether a person has a reasonable expectation of privacy in their IP address. (*Id.* at 13–14.)

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.