**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Avi Josefson (*pro hac vice*)
NYS Bar No. 4149407
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
*Counsel for Plaintiffs*

[Additional counsel listed on signature page.]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAEVE CAMPLISSON; DAVID SANCHEZ; and S.D., a minor, by and through their legal guardian ELVIS DICIERO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ADIDAS AMERICA, INC., an Oregon corporation,<br><br>Defendant. | Case No.: 3:25-cv-00603-GPC-GC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>Judge: Hon. Gonzalo P. Curiel<br><br>Magistrate Judge: Hon. Guillermo Cabrera<br><br>Date: August 28, 2026<br>Time: 1:30 p.m.<br>Courtroom: 12A |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 4

A. Plaintiffs Would Suffer Substantial Prejudice and Harm in the Event of a Stay .......... 4

1. The Proposed Stay Is of Indefinite Duration .......... 5

2. Because the Case Has Progressed Beyond the Initial Stages of Litigation, Any Delay Would Unfairly Prejudice Plaintiffs .......... 6

B. Adidas Has Not Identified Any Hardship if the Case Proceeds .......... 8

C. A Stay Does Not Serve the Orderly Course of Justice .......... 8

V. CONCLUSION .......... 10

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Auto Equity Sales, Inc. v. Super. Ct. of Santa Clara Cty.*,
20 Cal. Rptr. 321 (1962) .......... 9

*Burnell v. Swift Transportation Co.*,
2011 WL 13352810 (C.D. Cal. Jan. 20, 2011) .......... 6

*Cabiness v. Educ. Fin. Solutions, LLC*,
2017 WL 167678 (N.D. Cal. Jan. 17, 2017) .......... 7

*Camplisson v. Adidas America, Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 3

*Casillas v. Anytime Fitness Franchisor LLC*,
2026 WL 1365282 (Cal. Super. May 12, 2026) .......... 9

*Chaker v. Adams*,
2015 WL 410552 (S.D. Cal. Jan. 29, 2015) .......... 7

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .......... 4

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) .......... 1, 4, 5

*Dominguez v. Sonesta Int'l Hotels Corp.*,
648 F. Supp. 3d 1162 (N.D. Cal. 2023) .......... 6

*Edwards v. Oportun, Inc.*,
193 F. Supp. 3d 1096 (N.D. Cal. 2016) .......... 6

*Erceg v. Lending Club Corp.*,
475 F. Supp. 3d 1071 (N.D. Cal. 2020) .......... 6

*Frasco v. Flo Health*,
No. 3:21-cv-00757 (N.D. Cal.) .......... 7

*Fregosa v. Mashable, Inc.*,
2026 WL 183857 (N.D. Cal. Jan. 23, 2026) .......... 10

*Fregosa v. Mashable, Inc.*,
No. 3:25-cv-01094-CRB (N.D. Cal. Feb. 19, 2026) ....................................3, 10

*Gustavson v. Mars, Inc.*,
2014 WL 6986421 (N.D. Cal. Dec. 10, 2014)..................................................4

*Kalajian v. Rite Aid Corp.*,
2018 WL 6262852 (C.D. Cal. Mar. 7, 2018).....................................................6

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)...........................................................................4, 8, 9

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) ........................................................................5, 9

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ............................................................................8

*Maketa v. Valnet, Inc.*,
No. 3:25-cv-05517-RS (N.D. Cal. Mar. 4, 2026)............................................10

*Mendez v. Optio Solutions, LLC*,
239 F. Supp. 3d 1229 (S.D. Cal. 2017)..............................................................5

*Millennium Lab'ys, Inc. v. Ameritox, LTD.*,
2016 WL 11783308 (S.D. Cal. Oct. 7, 2016)......................................................8

*Nguyen v. Marketsource, Inc.*,
2018 WL 2182633 (S.D. Cal. May 11, 2018) ......................................................6

*Rodriguez v. Dish Network L.L.C.*,
2026 WL 1468210 (Cal. Super. Apr. 28, 2026) ...................................................9

*Sandoval v. Friendlum, Inc.*,
2018 WL 1150837 (S.D. Cal. Mar. 2, 2018).........................................................4

*Skulevold v. SD&A Techs.*,
2020 WL 7711834 (C.D. Cal Nov. 18, 2020) ..................................................6, 8

*Summers v. Delta Air Lines, Inc.*,
508 F.3d 923 (9th Cir. 2007) ..............................................................................7

*In re Taco Bell Wage & Hour Actions*,
2011 WL 3846727 (E.D. Cal. Aug. 30, 2011)................................................6, 8

*Turicchi v. Quaid*,
2019 WL 3213742 (C.D. Cal. Feb. 28, 2019) ....................................................7

*In re USA Today Co., Inc. Internet Tracking Litig.*,
No. 3:24-CV-05150-MMC (N.D. Cal. Apr. 27, 2026)........................................9

*Variety Media, LLC v. Superior Court*,
No. B350578 (Cal. Ct. App. May 11, 2026) ..........................................*passim*

**Statutes**

Cal. Pen. Code § 638.51......................................................................*passim*

## I. INTRODUCTION

Defendant Adidas America, Inc. ("Adidas") asks this Court to stay this action indefinitely while a California appellate court considers a legal issue this Court has already addressed. As courts in the Ninth Circuit have held, a stay is a drastic remedy that requires a strong showing of "hardship or inequity" to the party requesting a stay, and the lack of even just a "fair possibility" of prejudice to the nonmoving party. *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Respectfully, Adidas has not come close to making this showing.

***First***, a stay would prejudice Plaintiffs by halting already sustained meritorious claims for an indefinite period. Adidas argues a stay is warranted because an intermediate state California court is set to rule upon an issue this Court decided in denying defendant's motion to dismiss—that California Penal Code § 638.51 applies to internet tracking technology like the TikTok Pixel and Microsoft Bing Trackers. ECF No. 32 at 10-11, 13-15. Adidas now seeks a second bite at the apple, arguing that a decision by a California Court of Appeal in *Variety Media, LLC v. Superior Court*, No. B350578—a case over which this Court has no control and which operates on no fixed timeline—could rule the other way. But not only is the appeal outcome, and the actual issues the court will decide, far from clear, the losing party in *Variety Media* will undoubtedly seek further appellate review. In other words, not only would the delay occasioned by a stay be far longer than Adidas suggests, but the decision it argues warrants halting these proceedings may not even be persuasive authority for very long. This kind of indefinite delay is precisely the kind of harm courts recognize in denying stays .

***Second***, Adidas has not alleged any harm in the absence of a stay. Adidas argues that they will expend "the time and money" associated with defending the lawsuit. Mot. at 7. But this is true in every case, and as courts have repeatedly held, not hardship sufficient to grant a stay of proceedings.

***Third***, a stay does not serve the orderly course of justice because *Variety Media* is an state intermediate appellate proceeding that would provide persuasive, not binding, authority, as Adidas itself concedes—though the Court, admittedly, would owe the decision a high level of deference. However, even if the intermediate court in *Variety Media* rules in the defendant's favor, it could do so in a manner that would not control the outcome here. As such, Plaintiffs respectfully request that the Court deny the motion in its entirety.

## II. BACKGROUND

Plaintiffs filed this proposed class action in March 2025 alleging a violation of California Penal Code § 638.51, the pen register and trap-and-trace provision of the California Invasion of Privacy Act ("CIPA").

Plaintiffs' claims arise from Defendant's secret use of technology from third parties like TikTok and Microsoft to harvest personally identifiable information from Plaintiffs and Class members. ¶¶1-3.[1] Each time a person visits the Adidas Website, Adidas uses various trackers, including the TikTok Pixel and Microsoft Bat Bing, to install pixels with unique identifiers on visitors' web browsers. ¶¶21-28. Installation occurs without notice. ¶¶5, 49-53. Once installed, the Trackers collect visitors' IP addresses, rich with data about where visitors are located, along with their device data and browsing history. ¶¶3, 21-28, 30. Adidas then shares this information with TikTok and Microsoft, which combine it with data gathered from other sources to build detailed consumer profiles—a process known as fingerprinting—and to monitor users' behavior across the Internet. ¶¶24, 27, 29-34, 43-44. Media outlets have reported on the invasive nature of TikTok's data collection, revealing ByteDance's use of TikTok data to uncover journalist sources and its intention to use TikTok data to spy on American citizens. ¶¶41-42.

Adidas moved to dismiss the Complaint in July 2025, arguing, among other

[1] "¶_" references the Amended Complaint (ECF No. 3). Capitalized terms not otherwise defined have the same meaning as set forth in the Complaint.

things, that the Trackers here are not pen registers within the meaning of § 638.51. In a thorough and well-reasoned opinion, the Court denied the motion on November 18. As the Court noted then, "a pen register can encapsulate internet communications," as the overwhelming weight of authority has concluded. *Camplisson v. Adidas America, Inc.*, 809 F. Supp. 3d 1095, 1107 (S.D. Cal. 2025) (collecting cases); *see also Fregosa v. Mashable, Inc.*, 2026 WL 183857, at *2 (N.D. Cal. Jan. 23, 2026) (denying interlocutory appeal on whether trackers are pen registers; "every federal court to tackle the CIPA applicability question has rejected Mashable's position."). The Court therefore had no trouble deciding, over Defendant's argument to the contrary, that "website-based trackers can plausibly constitute a pen register" under § 638.51. *Camplisson*, 809 F. Supp. 3d at 1107.

Following the Court's Order, the parties proceeded to discovery. The parties had their 26(f) conference on January 12, 2026, during which counsel for Adidas raised delaying formal discovery while the parties engaged in the Court's ENE process. At Defendant's request, after serving their first sets of interrogatories and requests for production on March 14, 2026, Plaintiffs agreed to extend Adidas's response deadline to 45 days after the ENE. A month later, on April 15, 2026, the parties had their first ENE. Judge Cabrera ultimately continued the ENE to June 3, 2026, to provide the parties additional time for informal discovery.

While the *Variety Media* appeal was pending for the entire duration of the parties' informal discovery efforts—since January 2026—Defendant did not raise it as a basis for staying this case until after the rescheduled ENE in June 2026. The *Variety Media* appeal was initiated on November 21, 2025, days after this Court issued its order on Plaintiffs' motion to dismiss. ECF No. 32. The Court of Appeal issued its Order to Show Cause on January 8, 2026, the week before the parties had their initial conference. And in May and June, the court issued requests for supplemental briefing indicating it was considering issues beyond the specific question of the proprietary of applying CIPA pen register claims to internet

technology, and that the answer to that question could turn on case-specific facts.

## III. LEGAL STANDARD

While the District Court has inherent power to stay federal proceedings, the Ninth Circuit recognizes "certain restrictions on what otherwise might be an unfettered exercise of discretion." *Dependable Highway*, 498 F.3d at 1066. In particular, "'if there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

Specifically, courts in this Circuit evaluate three factors when considering a stay: (1) "the possible damage which may result from granting the stay," (2) "the hardship or inequity which a party may suffer in being required to go forward, and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from the stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936))

## IV. ARGUMENT

### A. Plaintiffs Would Suffer Substantial Prejudice and Harm in the Event of a Stay

The first *Landis* factor—whether a stay would prejudice the nonmoving party—weighs against a stay. Courts find a plaintiff's showing of prejudice sufficient to deny a stay where the proposed stay is of an indefinite period, risks the degradation of evidence, or where it increases the difficulty of obtaining testimony or reaching potential class members. *See, e.g., Sandoval v. Friendlum, Inc.*, 2018 WL 1150837, at *5 (S.D. Cal. Mar. 2, 2018) (collecting cases). Adidas dismisses the potential prejudice against Plaintiffs as "'mere delay'" (Mot. at 5, citing *Gustavson v. Mars, Inc.*, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014)), but this characterization ignores the indefinite nature of the proposed stay, the

procedural posture of this case, and the increased difficulty in prosecuting this case after a lapse in time that would accompany Defendant's proposed stay.

**1. The Proposed Stay Is of Indefinite Duration**

Courts in this district are reluctant to grant a stay where the duration of the proposed stay is speculative. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."); *see also Dependable Highway*, 498 F.3d at 1066 ("Generally, stays should not be indefinite in nature."). This is exactly the case here. Adidas frames the *Variety Media* timeline as short and predictable, projecting a decision by "end of 2026 or early 2027." Mot. at 8. But this projection is speculative. No decision deadline exists. Indeed, even after "briefing and oral arguments in the appeal are . . . complete," it remains "***far*** from guaranteed that a final result in [the appeal] is imminently forthcoming." *Mendez v. Optio Solutions, LLC*, 239 F. Supp. 3d 1229, 1233 (S.D. Cal. 2017). Moreover, the losing party will undoubtedly seek further appellate review and, considering the importance of this issue, it is certainly possible the California Supreme Court could grant review, extending the stay for many more months.[2] In light of this additional appellate review, "even the most optimistic estimate of the time required for a decision from [the Court of Appeal] significantly understates both the delay a stay might engender

---

[2] In support of its contention that a decision will follow within 90 days of oral argument, Defendant cites provisions from the California Constitution and Government Code prohibiting judicial compensation when causes submitted for decision are pending before the court for more than 90 days. While that may speak to judicial incentives, it is not a deadline for decision. In fact, the Second Appellate District practice guide that Defendant cites underscores the uncertainty of a decision date. *See* Basic Civil Appellate Practice in the Court of Appeal for the Second District, Los Angeles County Bar Association, https://lacba.org/?pg=Appellate-Court-Primer (last accessed July 24, 2026) ("At the conclusion of oral argument, the Court will take the case under submission, and it ***will ordinarily file*** its decision within three months.") (emphasis added).

and the concomitant prejudice to Plaintiff[s]." *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1102 (N.D. Cal. 2016) (denying stay pending out-of-circuit decision noting that "[w]hichever party is unsuccessful . . . is almost certain to appeal to the Supreme Court").

Thus, unlike the cases Adidas cites, which involve stays of known, finite duration, the stay proposed here has no endpoint. *See, e.g.*, *Kalajian v. Rite Aid Corp.*, 2018 WL 6262852, at *2 (C.D. Cal. Mar. 7, 2018) (granting joint motion for six-month stay pending circuit court ruling). Adidas further relies on cases in which the court granted a stay where the appeal at issue was pending before the Supreme Court or the California Supreme Court. *See, e.g.*, *Dominguez v. Sonesta Int'l Hotels Corp.*, 648 F. Supp. 3d 1162, 1173 (N.D. Cal. 2023) (pending decision from California Supreme Court); *Skulevold v. SD&A Techs.*, 2020 WL 7711834 at *4 (C.D. Cal Nov. 18, 2020) (noting that resolution of Supreme Court decision would be final and no longer "be subject to appeal"); *Erceg v. Lending Club Corp.*, 475 F. Supp. 3d 1071, 1075 (N.D. Cal. 2020) (pending decision from California Supreme Court decision); *Nguyen v. Marketsource, Inc.*, 2018 WL 2182633, at *6 (S.D. Cal. May 11, 2018) (pending Supreme Court decision); *In re Taco Bell Wage & Hour Actions*, 2011 WL 3846727, at *2-3 (E.D. Cal. Aug. 30, 2011) (pending decisions from California Supreme Court); *Burnell v. Swift Transportation Co.*, 2011 WL 13352810, at *5 (C.D. Cal. Jan. 20, 2011) (same). None of these cases support the open-ended stay Adidas seeks here.

**2. Because the Case Has Progressed Beyond the Initial Stages of Litigation, Any Delay Would Unfairly Prejudice Plaintiffs**

This case, which has been pending since March 2025, is not in its infancy. The Court has ruled on Defendant's motion to dismiss, the parties have held two ENEs, and discovery is underway. Plaintiffs have served comprehensive discovery requests, and the parties are actively negotiating document production to meet the

case schedule set by the Court. A stay of indeterminate length would undermine this schedule. When the stay eventually lifts, whether in six months, one year, or longer, the parties will essentially need to restart the discovery process, re-engage with scheduling, and seek new deadlines from the Court. The judicial resources already invested in establishing this schedule would be wasted. *Turicchi v. Quaid*, 2019 WL 3213742, at *3 (C.D. Cal. Feb. 28, 2019) (recognizing prejudice from delay where case has progressed beyond initial stages).

Contrary to Adidas's characterizations, a stay imposes substantial prejudice on Plaintiffs. That is true especially here, where the proposed indefinite stay risks the departure of key witnesses, the degradation of memories, and the loss of evidence in the possession of Defendants and third parties. As seen in the recent *Flo* trial, which involved a CIPA wiretapping claim, witness testimony is crucial evidence and confirms that privacy cases like this one do not turn solely on documentary evidence. *See, e.g.*, *Frasco v. Flo Health*, No. 3:21-cv-00757 (N.D. Cal.), ECF No. 750 at 817-80; 947-72 (direct examination of Meta employees). To the contrary, the factfinder's assessment of Adidas's implementation of the Trackers, the effectiveness of any disclosures to consumers, and Adidas's use and exploitation of the information collected by the Trackers will—like it does in all cases—involve the testimony of witnesses with knowledge of the facts. *See, e.g.*, *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 928 (9th Cir. 2007) ("[T]he presentation of a party's case is generally achieved—unless a fact is stipulated—through evidentiary exhibits and live testimony . . . .")

Moreover, courts recognize stays impose particular harm in class actions like this one, as "the passage of time will make it more difficult [for Plaintiffs] to reach class members and will increase the likelihood that relevant evidence will dissipate." *Cabiness v. Educ. Fin. Solutions, LLC*, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017); *see also Chaker v. Adams*, 2015 WL 410552, at *3 (S.D. Cal. Jan. 29, 2015) (denying request for state because "as time passes, memories can fade and witnesses

may become unavailable").

### B. Adidas Has Not Identified Any Hardship if the Case Proceeds

The second *Landis* factor—hardship or inequity to the moving party—likewise weighs against a stay. Adidas's claimed hardship amounts to the burden of defending a suit. But that is not the kind of "hardship" the Ninth Circuit has contemplated. The "require[ment] to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" in this Circuit. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *Millennium Lab'ys, Inc. v. Ameritox, LTD.*, 2016 WL 11783308, at *5 (S.D. Cal. Oct. 7, 2016) (denying stay where defendant's alleged hardship "amounts to no more than the general hardships associated with defending an action"). If the mere possibility that a future appellate decision might alter the legal landscape were sufficient to establish hardship, as Adidas argues, virtually any case touching an unsettled legal question would warrant a stay. The law does not support so expansive a rule.

Adidas's reliance on *Skulevold v. SD&A Teleservices, Inc.*, 2020 WL 7711834 (C.D. Cal. Nov. 18, 2020), and *In re Taco Bell Wage & Hour Actions*, 2011 WL 3846727 (E.D. Cal. Aug. 30, 2011), does not help. In those cases, the courts found hardship based on specific factual circumstances not present here, such as extensive discovery obligations or the potential for dispositive resolution of threshold legal issues by a court of final resort. Adidas meanwhile concedes that the case will not be "document-intensive" (Mot. at 6), acknowledges that the *Variety Media* ruling is persuasive (Mot. at 9), and does not dispute that this Court has already resolved the threshold legal question adversely to it.

### C. A Stay Does Not Serve the Orderly Course of Justice

The third *Landis* factor asks whether a stay would simplify "issues, proof, and questions of law." *Lockyer*, 398 F.3d at 1110. That factor does not require that the pending proceeding be controlling of this case—only that it be likely to simplify it.

*Leyva, Ltd.*, 593 F.2d at 863-64. *Variety Media* will do no such thing despite Adidas's arguments that a ruling in their favor will dispose of the case. The issue on appeal is not simply whether "§ 638.51 [applies] to online, non-telephonic data collection." Mot. at 3.

Indeed, the Court of Appeal issued two requests for supplemental briefing, illustrating the complexity of the questions in *Variety Media*. For example, the court questioned whether Variety has improperly raised these arguments on appeal, ruling in the affirmative would result in these questions being presented to the trial court for further contemplation—further extending what is likely to be a lengthy stay. *See Variety Media, LLC v. Super. Ct. L.A. Cty.*, No. B350578 Ltr. to Counsel regarding Supplemental Briefing (Cal. Ct. App. May 11, 2026). The court also sought supplemental briefing on whether online trackers must collect "destination identifying metadata" to classify as a pen register under § 638.51. *Id.* Even if the Court of Appeal adopted this standard, that would only seem to favor against a stay as the discovery Adidas wants to halt could inform whether the Trackers meet that hypothetical standard.

And even if the Court of Appeal rules that § 638.51 does not apply to internet Trackers, that decision could be subject to further review by the California Supreme Court—meaning that the "clarification" Adidas claims *Variety Media* appellate decision will provide may never arrive.

Tellingly, none of the federal stay orders Adidas cites support its position on judicial efficiency here.[3] In each of the federal cases, no dispositive motion has been filed and the parties *stipulated* to the stay. *See In re USA Today Co., Inc. Internet*

[3] Defendant cites to two *state* superior court cases where a stay was entered on a disputed motion. *See Casillas v. Anytime Fitness Franchisor LLC*, 2026 WL 1365282, at *3 (Cal. Super. May 12, 2026); *Rodriguez v. Dish Network L.L.C.*, 2026 WL 1468210, at *4 (Cal. Super. Apr. 28, 2026). But decisions of the Court of Appeal are unequivocally binding upon state superior courts. *Auto Equity Sales, Inc. v. Super. Ct. of Santa Clara Cty.*, 20 Cal. Rptr. 321, 323-24 (1962).

*Tracking Litig.*, No. 3:24-CV-05150-MMC, ECF No. 79 (N.D. Cal. Apr. 27, 2026); *Maketa v. Valnet, Inc.*, No. 3:25-cv-05517-RS, ECF No. 51 (N.D. Cal. Mar. 4, 2026); *Fregosa v. Mashable, Inc.*, No. 3:25-cv-01094-CRB, ECF No. 82 (N.D. Cal. Feb. 19, 2026). These stipulated stay orders reflect nothing more than the parties' mutual convenience. They involve no adversarial testing of the stay factors and no judicial finding that a stay is warranted over opposition. And Adidas neglects to mention that in two of them—*Maketa* and *Fregosa*—the plaintiffs' counsel is Bursor & Fisher, P.A., the same lawyers representing the real party in interest in *Variety Media*. In other words, the decision to stipulate in those cases may well have been a matter of efficiency and docket management.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Stay in its entirety.

DATED: July 24, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson (admitted *pro hac vice*)
(avi@blbglaw.com)
Michael Blatchley (admitted *pro hac vice*)
(michaelb@blbglaw.com)
Todd Clayton (admitted *pro hac vice*)
(Todd.Clayton@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

-and-

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Plaintiffs*