UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAEVE CAMPLISSON; DAVID SANCHEZ; and S.D., a minor, by and through their legal guardian ELVIS DICIERO, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br>ADIDAS AMERICA, INC., an Oregon corporation,<br>Defendant. | Case No.: 25-CV-00603-GPC-GC<br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY**<br>**[ECF No. 55, 64]** |

Before the Court is Defendant Adidas America, Inc.'s ("Defendant") motion to stay the proceedings. ECF No. 55. The motion to stay has been fully briefed. ECF Nos. 58, 61. The Court VACATES the hearing set on August 28, 2026. Based on the reasoning below, the Court GRANTS Defendant's motion to stay. The Court also DENIES the parties' joint motion to adjourn hearing on Defendant's motion to stay, ECF No. 64, as moot.

## FACTUAL BACKGROUND

Defendant owns and uses its website www.adidas.com/us, allowing consumers to buy and access information about the brand's products. ECF No. 3 ("Compl.") ¶ 21. As part of its website, Defendant has installed tracking pixels TikTok Pixel and Microsoft Bing (together, "Trackers"). Compl. ¶ 3. Tracking pixels are "small, almost-invisible image[s]…embedded in a website or an email to track a user's activities." *Id.* ¶ 23. When a user visits a website, the website's code installs the tracker into the user's browser and can, at that point, track user interactions "on its platform in order to place targeted advertisements." *Id.* ¶¶ 26-27. The tracked data can include "the user's operating system, the type of website or email used, the time when the website was accessed, the user's IP address, and whether there are cookies that previously have been set by the server hosting the pixel image." *Id.* ¶ 23.

Each of the Trackers have different tracking capabilities. The TikTok Pixel "enables website owners to track users' interactions with the website" and "collects and reports supplementary metadata, including timestamp (when an action took place), IP address (which can be used to determine the geographic location of the user), unique identifiers (which are assigned to a user's device or browser session that distinguish one user from another), device details (make, model, operating system), and browser information." *Id.* ¶ 30. It also uses "fingerprinting"—a process that collects information about the website user and matches it to information within the existing TikTok database across other websites with the pixel installed. *Id.* ¶ 31. This process associates information gathered from the pixel with personally identifying information, allowing one to track specific device activity. *Id.* TikTok Pixel also utilizes "AutoAdvanced Matching," which allows personal information (e.g., name, date of birth, address) to be sent to TikTok and identify a targeted individual with certainty. *Id.* ¶ 34. This information is used for analytics and advertising purposes for the website owner, but TikTok can also

share the data with third parties. *Id*. ¶¶ 35-36. Plaintiffs allege concerns that this private data could also be shared with China to surveil the user, given previous concerns from Congress, independent tech watchdogs, and human rights groups. *Id*. ¶¶ 38-42.

In comparison, the Microsoft Bat Bing Tracker similarly places a cookie on the user's browser to collect information, which is tracked by both the website owner and Microsoft. *Id*. ¶ 43. This information includes a unique Microsoft ID, which "track users' activity across the internet." *Id*. ¶ 44.

Defendant does not actively notify users of the Trackers on its website. However, the website has a link to its Terms and Conditions as well as its Privacy Policy. The Terms and Conditions outlines that third-party trackers, such as cookies, are used for targeted advertising. Mot. at 11. It also "explicitly directs consumers on how to opt out of the collection of their data." *Id*. The Privacy Policy "describe[s] that cookies and other tracking technologies are implemented on the browser in order to collect and store data, including the ability to recognize the users' devices to deliver relevant advertisements." Compl. ¶ 50.

Access to the Terms and Conditions and Privacy Policy is located in a hyperlink at the "very bottom" or footer of the website in "small font." *Id*. ¶ 51. The Defendant maintains this location pursuant to the California Online Privacy Protection Act ("CalOPPA"), Cal. Bus. & Prof. Code § 22575 *et seq*. Mot. at 12.

Plaintiffs, like other members of the defined Class, visited the adidas website and did not "consent to having their personally identifiable and addressing information collected, stored, or disseminated." *Id*. ¶ 54. Thus, Plaintiffs maintain that their "injuries occurred at the moment their information was improperly acquired by" Defendant. *Id*. ¶ 56.

/ / /

/ / /

## PROCEDURAL HISTORY

On March 14, 2025, Plaintiffs Maeve Complisson, David Sanchez, and S.D., a minor, (collectively, "Plaintiffs") filed a class action complaint against Defendant for allegedly violating the California Invasion of Privacy Act ("CIPA") when Defendant installed and used tracking pixels on Plaintiffs' and the Class' browsers, which collected their private information without their consent. ECF No. 1. On June 26, 2026, Defendant moved to stay the proceedings in light of a pending decision in *Variety Media, LLC v. Super. Ct. of the State of Cal.*, No. B350578 (Cal. Ct. App. Nov. 21, 2025). ECF No. 55 ("Mot."). On July 25, 2026, Plaintiffs filed a response in opposition. ECF No. 58 ("Opp.). On August 7, 2026, Defendant filed a reply. ECF No. 61 ("Rep.").

## LEGAL STANDARD

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "A stay is not a matter of right[.]" *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926). Rather, it is "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginia R. Co.*, 272 U.S. at 672). The party requesting a stay bears the burden of demonstrating that a stay is appropriate. *Id.* at 434; *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at *2 (N.D. Cal. May 1, 2015).

In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). These interests include: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof,

and questions of law which could be expected to result from a stay." *Id.* While these three considerations are important, ultimately, the court can consider "the totality of the circumstances governs." *Consumer Fin. Prot. Bureau v. Daniel A. Rosen, Inc.*, No. 2:21-CV-07492-VAP-JDEX, 2023 WL 11876966, at *2 (C.D. Cal. Jan. 3, 2023).

**DISCUSSION**

Defendant argues the stay should be granted because *Variety Media, LLC v. Super Ct. of the State of Cal.*, No. B350578 (Cal. Ct. App. Nov. 21 2025) is poised to answer whether "commonplace internet technologies," such as website cookies, applies under the § 638.51 of CIPA—a relevant legal issue in this instant case. Mot. at 7. [1] Defendant maintains that all three factors considered for a stay weigh in its favor. *Id*. at 10. Plaintiffs contest, arguing that none of the three factors favor a stay. Opp. at 1-2.

**I. Possible Damage Resulting from Granting Stay**

The first *Landis* factor considers "the possible damage which may result from granting the stay." *CMAX*, 300 F.2d at 268. Courts consider whether granting a stay will "cause undue prejudice" and consider factors such as "the stage in the litigation, whether discovery is or will be complete, and whether the matter has been marked for trial." *ASCII Corp. v. STD Ent. USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994).

This putative class action case is at an early stage, a scheduling order regulating discovery was issued on June 4, 2026, and no depositions have reportedly occurred. ECF No. 54. The current deadline for filing a class certification motion is November 6, 2026, and a trial date has not been scheduled. *Id*. Defendant asserts that there is no risk of deterioration of evidence because the case is not document-sensitive and Defendant is preserving relevant information pursuant to Federal Rule of Civil Procedure 37(e). Mot.

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

at 12. Accordingly, Defendant argues that this factor favors a stay because Plaintiffs would suffer no damage beyond mere delay, as the *Variety Media* appeal should have a ruling within six to eight months. Mot. at 10-11; Rep. at 8.

In turn, Plaintiffs contend that they would suffer substantial prejudice and harm because the proposed stay is indefinite, given it is subject to appeal to the California Supreme Court. Opp. at 5-6. They also maintain that the case has progressed beyond the initial stages of litigation. *Id*. at 6-7. Specifically, Plaintiffs argue that Defendant ignores the dissipation of key witnesses and testimonial evidence. *Id.*

"If a stay is especially long or its term is indefinite . . . a greater showing [is required] to justify it." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000); *see Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) ("the Court concludes that there is a 'fair possibility of harm' to Plaintiff because the length of the stay is an indefinite one."); *Lathrop v. Uber Techs.*, Inc., No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (ruling a fair possibility of harm existed because the proposed stay's indefinite length would increase difficulty of reaching class members, risk evidence dissipating, and the pending case would unlikely be the final stage of litigation).

While the case has not yet engaged in significant discovery, *see Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C-94-20775 RPA (EAI), 1995 WL 20470, *2 (N.D. Cal. Jan. 13, 1995) (granting a stay where parties have not engaged in significant discovery and no trial date has been set), and Defendant is preserving information in accordance with its obligations, the proposed stay is indefinite in nature and raises the prospect of the dissipation of key witnesses and testimonial evidence. The Court finds that an indefinite stay would create a fair probability of harm.

The cases that Defendant cites against these points are distinguishable and unavailing. First, Defendant cites cases which involved cases before the California

Supreme Court that were not subject to further appeal. *See, e.g., Dominguez v. Sonesta Int'l Hotels Corp.*, 648 F. Supp. 3d 1162, 1173 (N.D. Cal. 2023) (pending decision from California Supreme Court); *Skulevold v. SD&A Techs.*, 2020 WL 7711834 at *4 (C.D. Cal Nov. 18, 2020) (noting that resolution of Supreme Court decision would be final and no longer "be subject to appeal"); *Erceg v. Lending Club Corp.*, 475 F. Supp. 3d 1071, 1075 (N.D. Cal. 2020) (pending decision from California Supreme Court decision); *Nguyen v. Marketsource, Inc.*, 2018 WL 2182633, at *6 (S.D. Cal. May 11, 2018) (pending Supreme Court decision); *In re Taco Bell Wage & Hour Actions*, 2011 WL 3846727, at *2-3 (E.D. Cal. Aug. 30, 2011) (pending decisions from California Supreme Court); *Burnell v. Swift Transportation Co.*, 2011 WL 13352810, at *5 (C.D. Cal. Jan. 20, 2011) (same). Next, the cases Defendant references in support of intermediate appellate decisions concern those of the Ninth Circuit, which would be binding on this Court. *See, e.g.*, *Gustavson v. Mars, Inc.*, No. 13-CV-04537-LHK, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014) (granting stay where "the Ninth Circuit's decision is likely to provide substantial guidance, if not new law, that will materially impact the Court's decisions in the instant case"); *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. 13-CV-883 JGB (SPx), 2015 WL 13764632, at *3 (C.D. Cal. Sept. 8, 2015) (granting stay where "[t]he Ninth Circuit's ruling on the interlocutory appeal could clarify the issues in this case, in effect saving time and resources"); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11-MD-02295 JAH-BGS, 2022 WL 3153574, at *2 (S.D. Cal. Aug. 8, 2022) (granting stay pending Ninth Circuit decision).

Accordingly, the Court finds this factor leans in favor of denying an open-ended stay.

/ / /

/ / /

## II. Hardship and Inequity if Stay is Denied

When there is "even a fair possibility" of harm to the opposing party, the moving party "must make out a clear case of hardship or inequity in being required to move forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Defendant first argues it would be severely prejudiced if the stay were to be denied because it will have to expend a substantial amount of resources and time in discovery, in opposing class certification and on summary judgment motions. Mot. at 2-13. However, being required to defend a suit, which includes the costs of litigation and further discovery, does not sufficiently establish a clear case of hardship or inequity. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005); *Millennium Lab'ys, Inc. v. Ameritox, LTD.*, No. 12-CV-01063-MMA-JMA, 2016 WL 11783308, at *5 (S.D. Cal. Oct. 7, 2016); *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1102 (N.D. Cal. 2016); *cf.*, *Finder v. Leprino Foods Co.*, No. 1-13-CV-02059-AWI-BAM, 2017 WL 1355104, at *4 (E.D. Cal. Jan. 20, 2017) ("[F]orcing a party to conduct 'substantial, unrecoverable, and wasteful' discovery and pretrial motions practice on matters that could be mooted by a pending appeal may amount to hardship or inequity sufficient to justify a stay.").

The Court finds that Defendant has not made a sufficient showing of hardship or inequity as to current discovery requests but acknowledges potential hardship as to further substantive motions.

## III. Orderly Course of Justice

The third *Landis* factor considers the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268. Determining whether to grant a stay of litigation pending a related proceeding "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979); *Canady v. Bridgecrest*

*Acceptance Corp.*, No. CV-19-04738-PHX-DWl, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020) (finding that although a pending decision may not settle every question of fact and law in a suit, but is likely to settle and simplify them, weighs in favor of granting a stay). Instead, where state proceedings will "simplify many of the issues before the Court due to the overlapping nature of the claims," this factor weighs in favor of a stay. *Sanchez v. Green Messengers, Inc.*, 666 F. Supp. 3d 1047, 1054 (N.D. Cal. 2023). Conversely, a stay is inappropriate where the other proceeding is "unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005).

Here, *Variety Media* involves issues that overlap with the present case. Both require determining the meaning of § 638.51 and its application to commonplace internet technologies such as cookies. Though not binding, a published intermediate state court decision on state law would be helpful and instructive. *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). Given the split among federal district court decisions on this issue, it would stand as an important opinion from a California state court on California law.[2] *Variety Media* will likely provide this Court with substantial guidance that will materially impact the Court's decisions in this matter. Waiting for a decision to issue will "avoid exhausting judicial resources to decide …plaintiff's pending motion for

---

[2] Two state superior courts have entered a stay in two cases to obtain clarity on the application of § 638.51. See *Casillas v. Anytime Fitness Franchisor LLC*, 2026 WL 1365282, at *3 (Cal. Super. May 12, 2026); *Rodriguez v. Dish Network L.L.C.*, 2026 WL 1468210, at *4 (Cal. Super. Apr. 28, 2026). Additionally, several federal cases have entered into stipulated stays pending a decision on *Variety Media*, indicating that parties have acknowledged the decision's relevance to the § 638.51 question. *See In re USA Today Co., Inc. Internet Tracking Litig.*, No. 3:24-CV-05150-MMC, ECF No. 79 (N.D. Cal. Apr. 27, 2026); *Maketa v. Valnet*, Inc., No. 3:25-cv-05517-RS, ECF No. 51 (N.D. Cal. Mar. 4, 2026); *Fregosa v. Mashable, Inc.*, No. 3:25-cv-01094-CRB, ECF No. 82 (N.D. Cal. Feb. 19, 2026).

class certification, and any possible discovery-related matters or summary judgment motions to follow which may prove fruitless." *Seefeldt v. Ent. Consulting Int'l, LLC*., 441 F. Supp. 3d 775, 779 (E.D. Mo. 2020).

At the same time, the Court acknowledges that the supplemental briefing request may affect the applicability of the ruling. As argued by Plaintiffs, § 638.51 might not be decided in this appeal. Opp at 9. Specifically, the Court of Appeal requested supplemental briefing for whether Variety improperly raised certain arguments in its demurrer or writ petition and whether online trackers must collect "destination identifying metadata" to classify as a pen register under § 638.51. *Id.*; *see Variety Media, LLC v. Super. Ct. L.A. Cty.*, No. B350578 Ltr. to Counsel regarding Supplemental Briefing (Cal. Ct. App. May 11, 2026). As to the meaning of the request, it is impossible to tell whether Plaintiff's interpretation is more than speculation. At the same time, the pending decision seems likely to settle central legal issues that are the subject of this litigation, which would serve the orderly course of justice. Balancing the above considerations, this factor favors a short stay. Accordingly, the Court will impose a close-ended stay of six months to await a decision or indications that the appellate court is unlikely to address the salient questions before the Court.

## CONCLUSION

Weighing the above factors, Defendant's motion to stay is GRANTED for six months or until the state appellate court publishes its opinion in *Variety Media*, whichever is earlier. The parties should file a supplemental briefing at the end of the stay, informing the court on the status of *Variety Media*.

**IT IS SO ORDERED.**

Dated: August 26, 2026

Hon. Gonzalo P. Curiel
United States District Judge